MORGAN, LEWIS & BOCKIUS LLP
Susan D. Resley, Bar No. 161808
susan.resley@morganlewis.com
Alyse J. Rivett, Bar No. 287989
ali.rivett@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Telephone:   +1.415.442.1000
Facsimile:   +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Marc J. Sonnenfeld, *Admitted Pro Hac Vice*
marc.sonnenfeld@morganlewis.com
Karen A. Pieslak Pohlmann, *Admitted Pro Hac Vice*
karen.pohlmann@morganlewis.com
1701 Market St.
Philadelphia, PA 19103-2921
Telephone:   +1.215.963.5000
Facsimile:   +1.215.963.5001

*Attorneys for Defendants Gregory S. Clark and
Nicholas R. Noviello*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FELIX, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SYMANTEC CORPORATION, GREGORY S. CLARK, NICHOLAS R. NOVIELLO, and MARK S. GARFIELD,<br><br>Defendants. | Case No. 3:18-cv-02902-WHA<br><br>**GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS AND JOINDER TO SYMANTEC'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          January 31, 2019<br>Time:          8:00 a.m.<br>Location:    Courtroom 12, 19th Fl.<br>Judge:         The Hon. William H. Alsup |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................. 1

STATEMENT OF ISSUES (CIV. L.R. 7-4(a)(3)) ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

I.     INTRODUCTION ................................................................................................... 2

II.    ARGUMENT .......................................................................................................... 3

    A.    Plaintiff Fails To Allege Particularized Facts Demonstrating A Strong Inference Of Scienter. ........................................................................... 3

        1.    Clark's And Noviello's Executive Compensation And Stock Sales Do Not Demonstrate That They Acted With Scienter. ............................... 4

            a.    It Is Well-Established That Performance-Based Executive Compensation Packages Like Clark's And Noviello's Do Not Support Any Inference of Scienter Because Such Compensation Practices Are Common. ........................................ 4

            b.    Clark's And Noviello's Stock Sales Do Not Support A Strong Inference of Scienter............................................................. 5

                (i)    The timing of sales weighs against an inference of scienter because the sales occurred early in the putative Class Period.............................................. 6

                (ii)    The relatively small amount and percentage of stock sales weigh against an inference of scienter. ..................... 7

                (iii)    Clark and Noviello not only retained, but increased their holdings through the putative Class Period. ............... 9

                (iv)    All of Clark's and Noviello's sales were made pursuant to Rule 10b5-1 trading plans. ............................ 10

        2.    Other Conclusory Allegations Do Not Demonstrate Clark's And Noviello's Scienter.................................................................................... 11

        3.    Plaintiff's Remaining Scienter Allegations Consist Of A Hodgepodge Of Assertions That Are Legally Insufficient To Support A Strong Inference Of Scienter. ................................................. 12

    B.    Plaintiff's Control Person Claims Should Be Dismissed Because There Is No Adequately Pled Primary Violation. ............................................................. 14

    C.    Plaintiff's Section 20A Claims For Insider Trading Should Be Dismissed.......... 14

III.    CONCLUSION ..................................................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i          Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AST Research Sec. Litig.*
   887 F. Supp. 231 (C.D. Cal. 1995) ........................................15

*Berger v. Ludwick*
   No. C-97-0728-CAL, 2000 WL 1262646 (N.D. Cal. 2000), *aff'd*, 15 F. App'x
   528 (9th Cir. 2001) ........................................15

*Buban v. O'Brien*
   No. C 94-0331 FMS, 1994 WL 324093 (N.D. Cal. 1994)........................................15

*In re Calpine Corp. Sec. Litig.*
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) ........................................4

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*
   880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................11

*In re Cornerstone Propane Partners, L.P.*
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ........................................4

*In re Countrywide*
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)........................................13

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*
   503 F. Supp. 2d 25 (D.D.C. 2007) ........................................15

*In re FVC.COM Sec. Litig.*
   136 F. Supp. 2d 1031 (N.D. Cal. 2000), *aff'd*, 32 F. App'x 338 (9th Cir. 2002) .................7, 9

*In re Hansen Nat. Corp. Sec. Litig.*
   527 F. Supp. 2d 1142 (C.D. Cal. 2007)........................................10

*Kovtun v. VIVUS, Inc.*
   No. C 10-4957 PJH, 2012 WL 4477647 (N.D. Cal. 2012), *aff'd sub nom.*
   *Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015)........................................11

*In re Leapfrog Enter., Inc. Sec. Litig.*
   200 F. Supp. 3d 987 (N.D. Cal. 2016) ........................................12

*In re Leapfrog Enters., Inc., Sec. Litig.*
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) ........................................5, 7

*Lipton v. PathoGenesis Corp.*
   284 F.3d 1027 (9th Cir. 2002)........................................4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*In re Maxwell Techs., Inc. Sec. Litig.*
    18 F. Supp. 3d 1023 (S.D. Cal. 2014) ....................................................................5

4

5

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
    540 F.3d 1049 (9th Cir. 2008) ........................................................................8, 11

6

*In re MicroStrategy, Inc. Sec. Litig.*
    115 F. Supp. 2d 620 (E.D. Va. 2000) .................................................................15

7

8

*In re Netflix, Inc., Sec. Litig.*
    964 F. Supp. 2d 1188 (N.D. Cal. 2013), *aff'd sub nom. In re Netflix, Inc. Sec.*
    *Litig.*, 647 F. App'x 813 (9th Cir. 2016) ............................................................14

9

10

*In re Netflix, Inc. Sec. Litig.*
    No. C04-2978 FMS, 2005 WL 1562858 (N.D. Cal. 2005) .................................5, 8

11

12

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*
    184 F. Supp. 2d 991 (N.D. Cal. 2001) ......................................................3, 6, 8, 12

13

*In re PEC Solutions, Inc. Sec. Litig.*
    418 F.3d 379 (4th Cir. 2005) .............................................................................10

14

*In re Pixar Sec. Litig.*
    450 F. Supp. 2d 1096 (N.D. Cal. 2006) .................................................................6

15

16

*In re REMEC Inc. Sec. Litig.*
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...............................................................13

17

18

*In re Rigel Pharms., Inc. Sec. Litig.*
    697 F.3d 869 (9th Cir. 2012) ...............................................................................4

19

*Rodriguez v. Gigamon Inc.*
    325 F. Supp. 3d 1041 (N.D. Cal. 2018) ...............................................................11

20

21

*Ronconi v. Larkin*
    253 F.3d 423 (9th Cir. 2001) ............................................................................2, 8

22

23

*S. Ferry LP, No. 2 v. Killinger*
    542 F.3d at 784 ...................................................................................................13

24

25

*Schneider v. Vennard (In re Apple Computer Sec. Litig.)*
    886 F.2d 1109 (9th Cir. 1989) .............................................................................9

26

27

*Shurkin v. Golden State Vintners Inc.*
    471 F. Supp. 2d 998 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008) ..............14, 15

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii                    Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Silicon Graphics Inc. Sec. Litig.*
   183 F.3d 970 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No.
   2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ...............................................................9

*In re Syncor Int'l Corp. Sec. Litig.*
   239 F. App'x 318 (9th Cir. 2007) ...............................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   551 U.S. 308 (2007)..............................................................................................4, 10

*Tripp v. Indymac Fin. Inc.*
   No. CV07-1635-GW, 2007 WL 4591930 (C.D. Cal. 2007).......................................9

*In re Vantive Corp. Sec. Litig.*
   283 F.3d 1079 (9th Cir. 2002), *abrogated on other grounds by S. Ferry LP,
   No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008).................................................7, 10

*In re Verifone Sec. Litig.*
   784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd sub nom. In re VeriFone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993).....................................................................................14

*Webb v. Solarcity Corp.*
   884 F.3d 844 (9th Cir. 2018).........................................................................3, 12, 13

*Welgus v. TriNet Grp., Inc.*
   No. 15-CV-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ...................8

*Zamir v. Bridgepoint Educ., Inc.*
   No. 15-CV-408 JLS (DHB), 2018 WL 1258108 (S.D. Cal. 2018)..........................13

*Zucco Partners LLC v. Digimarc Corp.*
   552 F.3d 981 (9th Cir. 2009)....................................................................2, 5, 6, 13

**Statutes, Rules and Regulations**

Private Securities Litigation Reform Act of 1995, 15 U.S.C.
   §78u-4(a) *et seq.*.....................................................................................3, 5, 12, 13

Securities Exchange Act of 1934
   § 10(b) ................................................................................................2, 3, 5, 14
   § 20(a) ...........................................................................................................2, 3
   § 20A ...................................................................................................... *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv                                                    Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 31, 2019, at 8:00 a.m., before The Honorable William H. Alsup, United States District Court, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, Defendants Gregory S. Clark and Nicholas R. Noviello ("Clark" and "Noviello") will, and hereby do, move to dismiss the Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a) *et seq.*, and Federal Rules of Civil Procedure 9(b), and 12(b)(6).  Clark and Noviello further join in the Motion to Dismiss the Complaint filed by Defendant Symantec Corporation ("Symantec" or the "Company").

Clark's and Noviello's motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities; Symantec's Memorandum of Points and Authorities in support of its Motion to Dismiss ("Symantec's Motion to Dismiss" or "Symantec's Motion"); Symantec's Request for Judicial Notice and Notice of Incorporation By Reference; the Declaration of Cheryl W. Foung in Support of Symantec's Motion to Dismiss Consolidated Class Action Complaint for Violations of Federal Securities Laws ("Foung Decl.") and accompanying exhibits; the [Proposed] Order; the pleadings, records and papers on file in this action; and any other matters properly before the Court.

## STATEMENT OF ISSUES (CIV. L.R. 7-4(a)(3))

1.      Does the Complaint fail to state a claim for a violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5?

2.      Does the Complaint fail to state a claim for "controlling person" liability under Section 20(a) of the Exchange Act?

3.      Does the Complaint fail to state a claim for insider trading under Section 20A of the Exchange Act?

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                          Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION[1]

3       Armed only with speculation and presumption, Plaintiff concludes that Symantec's Chief

4   Executive Officer Gregory S. Clark and Chief Financial Officer Nicholas R. Noviello made

5   materially false statements and manipulated Symantec's financial results.  These allegations find

6   no support, and Symantec's Motion to Dismiss describes how and why Plaintiff's allegations fail

7   to state a claim for securities fraud and should be dismissed.  Clark and Noviello join Symantec's

8   Motion and separately address here the dearth of facts supporting Plaintiff's claim that Clark and

9   Noviello possessed the requisite mental state—scienter—required by Section 10(b) and that they

10   violated Sections 20(a) and 20A.

11       Despite its length, the Complaint falls short of the PSLRA's mandates because it does not

12   allege specific, contemporaneous facts demonstrating Clark's and Noviello's scienter.  Plaintiff

13   relies on Clark's and Noviello's executive compensation and their stock sales as indicia of

14   scienter.  But Plaintiff's bare inferences do not substitute for facts showing that their sales were

15   suspicious in timing and amount.  *See, e.g., Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d

16   981, 1005 (9th Cir. 2009) ("[I]nsider trading is suspicious only when it is 'dramatically out of line

17   with prior trading practices at times calculated to maximize the personal benefit from undisclosed

18   inside information.'")

19       Plaintiff attempts to bolster its bare scienter allegations by disguising as facts a plethora of

20   unsupported opinions by unreliable confidential witnesses, then piles on bare observations and

21   speculation premised on fraud by hindsight, scienter based on position, presumed knowledge of

22   complex accounting rules and Sarbanes–Oxley ("SOX") certifications.  Absent are "specific

23   '*contemporaneous* statements or conditions'" demonstrating scienter.  *Ronconi v. Larkin*, 253

24   F.3d 423, 432 (9th Cir. 2001).  Without sufficient scienter allegations, Plaintiff cannot state a

25   claim for Section 10(b) violations against Clark and Noviello.

26       Finally, because Plaintiff cannot adequately state a claim that Clark and Noviello violated

27

28

---

[1] Citations to "¶__" refer to the numbered paragraphs of the Complaint.  Abbreviated terms used herein have the same meaning as in Symantec's Motion to Dismiss.  Unless otherwise noted, all citations are omitted, and all emphasis is added.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                         Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

Section 10(b), its Section 20(a) and 20A claims fail.  Moreover, Plaintiff cannot demonstrate that it traded contemporaneously with Clark and Noviello or that Clark or Noviello possessed material non-public information when they sold stock, as required by Section 20A.

Simply put, Plaintiff's allegations are mere suppositions and conclusions that "pursue[] an extended chain of inferences," while "[t]he PSLRA clearly establishes a preference for facts over such inferential leaps." *In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1005 (N.D. Cal. 2001) (Alsup, J.).  The motion to dismiss should, therefore, be granted.[2]

## II.     ARGUMENT

### A.     Plaintiff Fails To Allege Particularized Facts Demonstrating A Strong Inference Of Scienter.

The PSLRA requires that Plaintiff plead particularized "'facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Webb v. Solarcity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018).  The Ninth Circuit has explained that a "'strong inference' . . . 'must be more than merely plausible or reasonable'"; the question is whether (accepting the allegations as true and viewing them collectively) a "'reasonable person [would] deem the inference of scienter at least as strong as any opposing inference?'" *Id.*

Instead of meeting these requirements, Plaintiff litters the Complaint with speculative inferences of nefarious motives or knowledge based on nothing more than descriptions of: a typical compensation system (¶ 281); non-suspicious stock sales (¶ 282); criticisms by former employees of Clark's and Noviello's management style and accounting judgment calls (¶¶ 265, 272, 275); and a hodgepodge of boilerplate, generalized allegations that are routinely rejected by courts. *See, e.g.,* ¶¶ 277-78.  These disguised "facts" do not come close to supporting a strong inference of scienter as to Clark and Noviello, much less one stronger than the competing non-culpable inference that they were making appropriate management and accounting decisions in light of the Company's new direction.

---

[2] Clark and Noviello incorporate by reference the Statement of Facts set forth in Symantec's Motion to Dismiss.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3                    Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1.      **Clark's And Noviello's Executive Compensation And Stock Sales Do Not Demonstrate That They Acted With Scienter.**

Plaintiff attempts to allege that Clark and Noviello were financially motivated to commit fraud based on executive compensation metrics and stock sales.  In so doing, it improperly tries to turn the executives' stake in the Company (which aligns their interests with shareholders) into some nefarious motive.  This tactic should be rejected.

      a.      **It Is Well-Established That Performance-Based Executive Compensation Packages Like Clark's And Noviello's Do Not Support Any Inference of Scienter Because Such Compensation Practices Are Common.**

The Complaint claims that Clark and Noviello were "incentive[ized] to manipulate" Symantec's non-GAAP metrics because their executive compensation was tied to the Company meeting certain financial metrics.  ¶ 281.  That allegation is rank speculation for two reasons.

First, "[i]t is common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in achieving key corporate goals.  Thus, especially given the holistic approach to assessing scienter adopted in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), and the requirement that we take into account plausible opposing inferences, we will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes."  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012); *accord In re Syncor Int'l Corp. Sec. Litig.*, 239 F. App'x 318, 321 (9th Cir. 2007) ("[s]tock-based bonuses are common and have limited probative value as to scienter").[3]  Accordingly, the generalized assertion that Clark and Noviello—like all of Symantec's executives—were eligible to receive cash bonuses and equity based on the Company achieving non-GAAP performance targets "is insufficient to establish a strong inference of scienter."  *In re Calpine Corp. Sec. Litig.* 288 F. Supp. 2d 1054, 1087 (N.D. Cal. 2003) (allowing

---

[3] *See also In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1092 (N.D. Cal. 2005) (noting "numerous cases [have] refus[ed] to find scienter based on executives' general motives to . . . increase the value of their stock holdings, and ensure overall profitability for the company as a means to increase one's own income" and collecting cases); *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("generalized assertions of motive, without more" are inadequate to establish scienter).

plaintiff to establish scienter based on "executive[] compensation [that] is tied to the performance or stock price of the company . . . would appear inconsistent with the intent of the PSLRA"); *see also In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1045 (S.D. Cal. 2014) (stating that "[I]f the existence of performance-based compensation and motive to increase short-term profits were enough to establish scienter, scienter could be found for almost any executive.").

Second, as described in Symantec's Motion at 2-4, the use of non-GAAP measurements to calculate executive compensation was long-standing and had been in place long before Clark and Noviello joined Symantec. Yet Symantec disclosed the very same GAAP and non-GAAP metrics *before and after* Clark and Noviello joined the Company; indeed, Symantec actually disclosed more information after the Blue Coat transaction because it included additional non-GAAP metrics after Clark and Noviello joined. Thus, to the extent Plaintiff speculates that Clark and Noviello somehow nefariously introduced non-GAAP financials in an effort to increase their compensation, such an inference fails *ab initio* for lack of factual support. *See In re Leapfrog Enters., Inc., Sec. Litig.*, 527 F. Supp. 2d 1033, 1044 (N.D. Cal. 2007) (allegations that are "entirely conclusory" are insufficient to establish scienter).

### b.   Clark's And Noviello's Stock Sales Do Not Support A Strong Inference of Scienter.

To evaluate whether stock sales qualify as "suspicious" to support a claim under Section 10(b), courts consider: "'(1) the amount and percentage of shares sold; (2) the timing of the sales; and (3) whether sales were consistent with insiders' prior trading history.'" *In re Netflix, Inc. Sec. Litig.*, No. C04-2978 FMS, 2005 WL 1562858, at *8 (N.D. Cal. 2005). Plaintiff does not come close to this and simply alleges—with no context—that Clark sold 200,000 shares on two dates in late August 2017, and that Noviello sold 435,388 shares at five different times from May 15, 2017 through November 6, 2017. ¶ 151. From these sales alone, Plaintiff seeks to imply that the sales are "suspicious" and improper. ¶ 152. But Plaintiff's inferences and speculation are not sufficient.

Plaintiff must—and cannot—provide a factual context for Clark's and Noviello's trading history. *See Zucco Partners,* 552 F.3d at 1005. Plaintiff seeks to skirt this requirement by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                                Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1   suggesting that these executives "joined Symantec in August 2016" and their trading history "is

2   thus limited to the days that they were at Symantec." ¶ 152 n.10.  Plaintiff's suggestions and

3   speculation do not "excuse[] [Plaintiff] from pleading the relevant history." *Zucco Partners*, 552

4   F.3d at 1005 ("[e]ven if the defendant's trading history is simply not available, for reasons

5   beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history.").  Its

6   failure to provide the relevant context for Clark's and Noviello's trades is a fatal blow to its

7   efforts to rely on stock sales to support an inference of scienter.  *Id.* at 1006 ("since there is no

8   allegation within the SAC that Davis and Ranjit's stock sales, though significant, are inconsistent

9   with their usual trading patterns, no inference of scienter can be gleaned from Zucco's stock sale

10   assertions."); *accord In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1105 (N.D. Cal. 2006)

11   ("Without a meaningful trading history from which to compare, the Court cannot conclude that

12   [the trades] were suspicious and thus supportive of scienter."); *see also In re Northpoint*

13   *Commc'ns Grp.,* 184 F. Supp. 2d at 1002-3 (considering stock sales in context and evaluating

14   whether they "are significantly out of line with their past sales history").

15       Even if Clark's and Noviello's stock sales, ¶¶ 282-283, were considered in isolation

16   without the relevant context, neither the timing nor the amount and percentage of shares sold

17   support the culpable inference that Plaintiff attempts to draw, but instead weigh against an

18   inference of scienter.

19                    **(i)      The timing of sales weighs against an inference of
                                scienter because the sales occurred early in the putative
20                              Class Period.**

21       The timing of the alleged fraudulent conduct affects the analysis of whether the timing of

22   the stock sales was suspicious.  *Zucco Partners*, 552 F.3d at 1005 (stock sales only suspicious if

23   they are made "'at times calculated to maximize the personal benefit from undisclosed inside

24   information.'").  Here, Clark's and Noviello's sales (which occurred between May and November

25   2017, long before the end of the putative Class Period) do not suggest suspicious timing.  There

26   was simply no "inside information" at the time of their sales on which they could maximize

27   benefits.  Indeed, Symantec's Motion notes the patent insufficiency of Plaintiff's bare allegations

28   of concealed "true" facts, namely: (1) representations that internal controls were effective when

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                                Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

they were not; (2) improperly recognized revenue; and (3) misclassification of ordinary course of business operating costs as transition costs.  ¶ 42.  The only allegations that can be tied to a specific time frame involve the alleged immaterial adjustment to revenue, which was recognized in Q4 2018.

But those allegations actually undermine Plaintiff's effort to infer scienter from stock sales.  That is because Symantec's fourth quarter for fiscal year 2018 began in January 2018, which was two months ***after*** Mr. Noviello's last stock sale (on November 6, 2017) and over four months after Mr. Clark's last stock sale (August 31, 2017).  Thus, the timing of the stock sales actually weighs ***against*** an inference of scienter since neither Clark nor Noviello sold any shares during the time period when the stock price had purportedly experienced any allegedly artificial inflation from the Q4 2018 recognition of revenue that was subsequently deferred.  *See, e.g., In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031, 1040 (N.D. Cal. 2000), *aff'd*, 32 F. App'x 338 (9th Cir. 2002) (if "defendants . . .  knew in January that the fourth quarter financials were false, one would expect that defendants would have continued to sell their stock into March as it became apparent that they were going to have to announce" a loss for Q4).

Simply put, the Complaint avers only that Defendants "took advantage of Symantec's inflated stock price" and sold stock "during the Class Period."  ¶ 151.  These generalized allegations are insufficient to support an inference of scienter.  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002) (stock sales only helpful in showing scienter "when those sales are able to be related to the challenged statements"), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008); *In re Leapfrog Enters., Inc., Sec. Litig.*, 527 F. Supp. 2d at 1052 (no inference of scienter where timing of specific sales was not linked to specific misstatements or omissions).

        **(ii)**     **The relatively small amount and percentage of stock sales weigh against an inference of scienter.**

The amount and percentage of Clark's and Noviello's stock sales do not support an inference of scienter.  Clark sold only 200,000 shares at the end of August 2017, which was an exercise of some of his options as shown on the face of the Form 4s.  Foung Decl., Ex. 21

GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1    (8/29/17 and 9/1/17 Clark Form 4s); *In re Northpoint Commc'ns Grp.*, 184 F. Supp. 2d at 1002

2    n.5 (taking judicial notice of totals from Form 4s filed with the SEC). The amount of this sale is

3    "not particularly suspicious." *Id.* at 1002 (referring to sale of 200,000 shares). Similarly

4    measured as a percentage, Clark's sales represent 5% or less of his available holdings, which are

5    routinely deemed "not particularly suspicious." *In re Northpoint Commc'ns Grp.*, 184 F. Supp.

6    2d at 1002 (sale of 9.5% of holdings "not particularly suspicious"); *accord In re Netflix, Inc. Sec.*

7    *Litig.*, 2005 WL 1562858, at *8 (sales of 7.5% and 15.7% of holdings is not suspicious). *See*

8    Symantec's Motion at 24 n.22 (calculation of percentage of available holdings that sales

9    represent).

10           Noviello had five sales during the putative Class Period in May, July, August, September

11    and November 2017. The first four sales were of 27,741, 10,034, 14,925 and 7,688 shares,

12    respectively. Foung Decl., Ex. 22 (Noviello Form 4s from 5/16/17, 7/13/17, 8/29/17 and 9/8/17).

13    All represent 7% or less of his available holdings which, like Clark's, are clearly not suspicious.

14    In November 2017, Noviello exercised an option and sold 375,000 shares. Foung Decl., Ex. 22

15    (11/8/17 Form 4). As disclosed in Noviello's SEC Form 3 filed 8/11/16, this option was the

16    conversion of Blue Coat options from prior to the merger with Symantec. Foung Decl., Ex. 22

17    (8/11/16 Form 3). Of those former Blue Coat options, approximately 370,000 were vested as of

18    August 1, 2016, and those were almost the entirety of the options he exercised and sold in

19    November 2017, which represents a prudent diversification of assets after the merger rather than a

20    lack of commitment to and confidence in Symantec (especially when compared to the equity he

21    retained in Symantec). *See Ronconi*, 253 F.3d at 435 ("corporate insider may sell stock to . . .

22    diversify his portfolio"); *see also, e.g.*, *Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017

23    WL 6466264, at *18 (N.D. Cal. Dec. 18, 2017) (post-IPO stock sales not suspicious when the

24    allegations can "equally or more likely support the inference that [defendant] was engaging in

25    modest diversification"). Indeed, as described in Symantec's Motion at 24-25 & n. 23, this sale

26    represented approximately 35% of Noviello's available holdings in Symantec, which is not

27    suspicious. *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th

28    Cir. 2008) (CEO "sold only 37% of his total stock holdings during the Class Period"; "we

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8                                    Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1  typically require larger sales amounts-and corroborative sales by other defendants-to allow insider

2  trading to support scienter").

3        (iii)   **Clark and Noviello not only retained, but *increased* their holdings through the putative Class Period.**

4

5        Further bolstering the conclusion that Clark's and Noviello's sales are not suspicious, both

6  executives not only retained, but significantly *increased* their holdings in Symantec and sold none

7  of their performance-based equity awards.  Despite Plaintiff's misleading allegations, both Clark

8  and Noviello maintained significant holdings even though the stock price declined from a close of

9  $32.16 on November 1, 2017 (the date of the last stock sale) to a close of $20.88 on August 2,

10  2018 (the end of the putative Class Period).  ¶ 11; Foung Decl., Ex. 20 at 295, 300.  Notably,

11  Clark—who *reinvested $40 million of his own money to acquire 2,329,520 shares of Symantec*

12  *stock* when Symantec acquired Blue Coat—could have, but chose not to sell over 5 million shares

13  as of August 2017 when the lock-up on those shares was lifted.[4]  As the Ninth Circuit noted

14  almost thirty years ago in *In re Apple Computer Sec. Litig.,* the fact that "defendants retained the

15  great bulk of their . . . holdings, and held on in the face of a [stock price] decline" is a factor that

16  "dispel[s]" "[a]ny remote inference of bad faith arising from the defendants' stock sales."

17  *Schneider v. Vennard (In re Apple Computer Sec. Litig.)*, 886 F.2d 1109, 1118 (9th Cir. 1989);

18  *see also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987-88 (9th Cir. 1999) (no strong

19  inference of scienter where defendants collectively retained over 90% of their stock holdings),

20  *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008); *In*

21  *re FVC.COM Sec. Litig.*, 136 F. Supp. 2d at 1038 (no strong inference of scienter where

22  defendants retained 86% of their shares); *Tripp v. Indymac Fin. Inc.*, No. CV07-1635-GW

23  (VBKx), 2007 WL 4591930, at *4 (C.D. Cal. 2007) (an "inference of scienter is functionally

24  negated" by defendants' retention of a large percentage of their stock).

25        Their decision to retain a significant portion of their holdings belies scienter because it

26  would have been irrational not to sell these large additional holdings if the individuals knew of

27

28  ─────────────
[4] *See* Foung Decl., Ex. 1 at 5 (6/14/16 Form 8-K); Ex. 17 at 238-61 (Clark Reinvestment Agreement).  The provisional period was met and the lock-up was lifted in August 2017.  Foung Decl., Ex. 21 (8/29/17 Form 4 showing securities beneficially owned).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                                          Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

the purported stock price inflation.  *See, e.g., In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1094

(CEO's sale of 13% of total shares and vested options over a 15-month period "belies any intent

to rid himself of a substantial portion of his holdings"); *In re Hansen Nat. Corp. Sec. Litig.*, 527

F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) ("any inference of scienter is defeated when an insider

sells only a portion of his stock holdings and 'end[s] up reaping the same large losses as did'

Plaintiff when the stock price dropped."); *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 390

(4th Cir. 2005) ("no scienter exists" where officers incurred large losses by retaining shares and

by exercising stock options).

Even more telling, Clark and Noviello held far more equity in Symantec at the end of the

putative Class Period than at the start of the putative Class Period.  Mr. Clark's holdings

increased by more than *5 million shares* or *2,443 percent* from the start of the putative Class

Period.  Similarly, Mr. Noviello's vested holdings increased by almost *800,000 shares or 214*

*percent* from the start of the putative Class Period.  The fact that Clark and Noviello *increased*

their holdings in Symantec undermines Plaintiff's (entirely unsupported) theory that the

individual defendants inflated transition costs in order to meet non-GAAP targets set for

performance-based equity awards, *see, e.g.,* ¶ 126, because these Defendants did not sell their

options.  If Clark and Noviello were trying to inflate results in order to line their own pockets,

they would have cashed out the options as soon as possible before their alleged scheme was

discovered.  That they did not weighs against Plaintiff's culpable inference.  The most reasonable

inference from Clark's and Noviello's decision to boost their Symantec holdings is that they were

committed to maximizing shareholder benefit over their own interests.  *Tellabs*, 551 U.S. at 324

(complaint does not survive if a reasonable person would not "deem the inference of scienter

cogent and at least as compelling as any opposing inference").

### (iv) All of Clark's and Noviello's sales were made pursuant to Rule 10b5-1 trading plans.

Notably, the Complaint concedes that *all* of Clark's and Noviello's stock sales were made

pursuant to Rule 10b5-1 trading plans.  ¶ 153.  This undermines any effort to demonstrate

scienter.  A 10b5-1 plan provides an "innocent, alternative explanation for the stock sales [that]

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1   negates an inference of scienter." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F.

2   Supp. 2d 1045, 1069 (N.D. Cal. 2012).  "[A]utomatic sales made pursuant to 10b5-1 plans do not

3   support a strong inference of scienter." *Rodriguez v. Gigamon Inc.,* 325 F. Supp. 3d 1041, 1056

4   (N.D. Cal. 2018); *accord Kovtun v. VIVUS, Inc.*, No. C 10-4957 PJH, 2012 WL 4477647, at *21

5   (N.D. Cal. 2012) (trades made pursuant to a Rule 10b5-1 plan not suspicious), *aff'd sub nom.*

6   *Ingram v. VIVUS, Inc.*, 591 F. App'x 592, 593 (9th Cir. 2015); *Metzler Inv. GMBH v. Corinthian*

7   *Colls., Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) (sales according to Rule 10b5-1 plans "may

8   rebut [ ] an inference of scienter.").

9          Noviello's first four sales in May 2017 through September 2017 were made pursuant to a

10  Rule 10b5-1 trading plan that was adopted on March 17, 2017, two months **before** the putative

11  Class Period began.  *See* Foung Decl., Ex. 22 (Form 4s).  Moreover, although some of the Rule

12  10b5-1 trading plans were adopted during the putative Class Period, they were all adopted in

13  2017 prior to the only example of "accounting manipulations" that could possibly support

14  Plaintiff's theory (in 2018), so there is nothing to support Plaintiff's position that those plans were

15  adopted with knowledge of material non-public information.  ¶ 153.

16         Clark's and Noviello's stock sales are not suspicious and do not support the requisite

17  strong inference of scienter.

18         **2.       Other Conclusory Allegations Do Not Demonstrate Clark's And**
            **Noviello's Scienter.**
19

20         Plaintiff identifies a laundry list of "Additional Allegations of Defendants' Scienter" that

21  consists of little more than recycling prior allegations based on "confidential sources" to support

22  scienter as well as falsity.  *See, e.g.*, ¶¶ 264-66 (Garfield left because of disagreements with Clark

23  and Noviello; Clark and Noviello "directed the accounting manipulations"); ¶ 272 (Clark and

24  Noviello "were highly involved in all key decisions at Symantec"); and ¶ 275 ("Noviello and

25  Clark brought Blue Coat's unethical practices and 'toxic culture' with them").  As fully set forth

26  in Symantec's Motion, these allegations all lack factual support since the confidential sources are

27  unreliable because, among other reasons, they left the Company early in the putative Class

28  Period, "the complaint does not discuss what the specific duties of these individuals were" and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                         Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

their allegations lack the "substantial specificity" that "[t]he PSLRA requires." *In re Northpoint Commc'ns Grp.*, 184 F. Supp. 2d at 1000 (rejecting scienter inference based on confidential witness allegations that did not specify detail about "frequent conference calls," which bills were unpaid, when, or how witness knew about it).  *See generally* Symantec's Motion at 13-20.

**3.      Plaintiff's Remaining Scienter Allegations Consist Of A Hodgepodge Of Assertions That Are Legally Insufficient To Support A Strong Inference Of Scienter.**

Plaintiff's seemingly last-ditch efforts to concoct sufficient scienter allegations fall well short of the PSLRA's requirement because they can be bucketed into categories regularly dismissed by courts as inadequate:

"Fraud By Hindsight":  Plaintiff alleges that Clark and Noviello knew or should have known of the internal control and revenue recognition issues because of the purported findings following an extensive internal investigation.  ¶¶ 279-80.  It goes on to state that they knew or recklessly disregarded facts given the purported "fact that outsiders quickly and easily determined that . . . accounting and internal control problems existed at Symantec."  ¶ 270.  Not only do these sweeping conclusions lack factual support, they are classic fraud by hindsight.  *See, e.g., In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1005 (N.D. Cal. 2016) ("Plaintiffs' theory is basically an assertion of fraud by hindsight—judging the statements on how things actually turned out subsequently. Such proof is not adequate to state a claim."); *Webb*, 884 F.3d at 857-58 (rejecting inference of scienter based on claim that defendants must have known about accounting error).  Plaintiff's scienter theory is, therefore, nothing more than "an extended chain of inferences" when "[t]he PSLRA clearly establishes a preference for facts over such inferential leaps."  *In re Northpoint Commc'ns Grp.*, 184 F. Supp. 2d at 1005.

"Scienter By Position":  Plaintiff also concludes that Clark and Noviello possessed the requisite mental state because they had "decades of professional experience in accounting and finance" were "knowledgeable" about "the accounting at issue" (¶¶ 268, 274), then leaps to the inference that they should have known that the alleged "fraud" "concerned the Company's core products" (¶ 278).  These assertions lack a factual basis, amounting to a mere presumption that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                                    Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1    Clark's and Noviello's scienter exists because of their positions as CEO and CFO at Symantec.

2    But scienter cannot be based on position alone. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d at 784

3    ("Where a complaint relies on allegations that management had an important role in the company

4    but does not contain additional detailed allegations about the defendants' actual exposure to

5    information, it will usually fall short of the PSLRA standard."); *In re Countrywide*, 588 F. Supp.

6    2d 1132, 1191 (C.D. Cal. 2008) ("For position-based allegations to satisfy the PSLRA, plaintiffs

7    must 'bridge the gap' between a defendant's mere access to information and an inference of

8    knowledge."); *Webb*, 884 F.3d at 857 (core operations theory requires either specific admissions

9    or witness accounts demonstrating executives' actual involvement in creating false reports).

10        <u>Presumption of Accounting Knowledge:</u>  Plaintiff assumes that Clark and Noviello knew

11    what GAAP required because GAAP is "straightforward" (¶ 268), and Blue Coat had previously

12    communicated with the SEC so they "were aware of" SEC requirements relating to GAAP. ¶ 269.

13    That sweeping assumption finds no support.  Moreover, GAAP is "not the lucid or encyclopedic

14    set of pre-existing rules that [Plaintiffs] might perceive it to be . . . There are 19 different GAAP

15    sources, any number of which might present conflicting treatments of a particular accounting

16    question . . . Consequently, GAAP tolerate a range of reasonable treatments, leaving the choice

17    among alternatives to management." *Zamir v. Bridgepoint Educ., Inc.*, No. 15-CV-408 JLS

18    (DHB), 2018 WL 1258108, at *7 (S.D. Cal. 2018).

19        <u>Signing of SOX Certifications:</u>  Plaintiff concludes—with no factual support—that

20    Clark's and Noviello's signed SOX certifications demonstrate scienter.  ¶ 276.  This boilerplate

21    allegation—without more—is insufficient. *Zucco*, 552 F.3d at 1003-04 ("Boilerplate language in

22    a [] 10–K form, or required certifications under Sarbanes–Oxley section 302(a), however, add

23    nothing substantial to the scienter calculus."); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d

24    1202, 1248-49 (S.D. Cal. 2010) (holding "[defendant's] Certification that [the Company's]

25    internal controls were 'effective' is not evidence that [defendant] had an intent to deceive").[5]

26        Thus, even viewing scienter in the most "holistic" fashion, the scienter allegations against

27    Clark and Noviello do not pass muster.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[5] This allegation also fails because internal controls were effective.  Foung Decl., Ex. 16 at 230.

GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

**B.      Plaintiff's Control Person Claims Should Be Dismissed Because There Is No Adequately Pled Primary Violation.**

It is axiomatic that "[a]bsent an underlying violation of the Exchange Act, there can be no control person liability under Section 20(a)." *In re Netflix, Inc., Sec. Litig.*, 964 F. Supp. 2d 1188, 1199 (N.D. Cal. 2013), *aff'd sub nom. In re Netflix, Inc. Sec. Litig.*, 647 F. App'x 813 (9th Cir. 2016).  As stated above and in Symantec's Motion, Plaintiff fails to allege an underlying violation of Section 10(b) so its Section 20(a) control person claims must be dismissed.  *See id.*

**C.      Plaintiff's Section 20A Claims For Insider Trading Should Be Dismissed.**

"Section 20A of the Securities Exchange Act prohibits sales by any person who trades in securities while in possession of material nonpublic information.  Insider trading claims under Section 20A "'require a predicate violation of a securities law, contemporaneous trading of a defendant and plaintiff, and a profit gain or loss.'"  *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1026 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008) (citing *Howard v. Hui*, No. C 92–3742–CRB, 2001 WL 1159780, at *6 (N.D. Cal. 2001)).  Plaintiff's insider trading claims under Section 20A fail to satisfy all of these requirements.

First, Plaintiff's Section 20A claim fails to allege an underlying violation of Section 10(b). There "can be no insider trading liability under Section 20A without an underlying violation of Section 10(b)." *Netflix, Inc., Sec. Litig.*, 964 F. Supp. 2d at 1199 (dismissing 20A claims because no underlying Exchange Act violation was sufficiently pled) (citing *In re VeriFone Securities Litigation*, 11 F.3d 865, 872 (9th Cir. 1993)).

Second, Plaintiff's purchases are not contemporaneous with Clark's or Noviello's sales. Plaintiff does not even attempt to establish contemporaneousness with four of Clark's and Noviello's stock sales, so those sales cannot support a Section 20A claim.  *See* ¶ 318 (alleging seven stock sales by defendants); ¶ 319 (alleging contemporaneousness as to only three sales); *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992), *aff'd sub nom. In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993) (holding plaintiffs did not state a 20A claim as to trades for which no contemporaneous trades were alleged).  Plaintiff fails to allege a contemporaneous trade with Noviello's November 6, 2017 sale because Plaintiff's closest alleged purchase was the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14                    Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

following day.  *See, e.g., In re AST Research Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) (only same-day trades are contemporaneous); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 503 F. Supp. 2d 25, 47 (D.D.C. 2007) (collecting and agreeing with cases requiring same-day trades for 20A claims because it is implausible that plaintiffs trading on a different day actually traded with defendants).[6]

Indeed, Plaintiff cannot satisfy the contemporaneousness requirement as to ***any*** of Clark's or Noviello's trades because Clark and Noviello sold their shares for more than Plaintiff paid. ¶ 319 (Clark and Noviello sold on August 28, 2017 for $30 but Plaintiff paid $29.59; Noviello sold on November 6, 2017 for $29.38 but Plaintiff paid $28.72).  Trades are not "contemporaneous" under Section 20A when defendant sells shares for more than plaintiff paid.  *Buban v. O'Brien*, No. C 94-0331 FMS, 1994 WL 324093, at *3 (N.D. Cal. 1994) ("Under these circumstances, . . . it is clear that plaintiff could not have traded with defendant); *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664 (E.D. Va. 2000) (trades not contemporaneous when defendant sold shares for more than plaintiff paid).

Even if Plaintiff had adequately alleged both an underlying violation of the Exchange Act and contemporaneous trades with Clark and Noviello, its Section 20A claim would still fail because it does not allege Clark or Noviello knew (*i.e.*, possessed) material non-public information when they sold stock.  *Berger v. Ludwick*, No. C-97-0728-CAL, 2000 WL 1262646, at *11 (N.D. Cal. 2000), *aff'd*, 15 F. App'x 528 (9th Cir. 2001) (dismissing 20A claim when complaint "does not allege what inside information was known to individual defendants").  As discussed above, Plaintiff fails to plead scienter as to these issues – let alone show what Clark and Noviello knew or should have known as of the dates of the trades at issue, which were near the beginning of the putative Class Period (August 28, 2017 and November 6, 2017).  *Shurkin*, 471 F. Supp. 2d at 1025-26 (dismissing 20A claim because no underlying violation when plaintiff did not specify when or what material non-public information defendant possessed).

---

[6] "The [contemporaneous] requirement was intended to preserve the notion that only plaintiffs who were harmed by the insider could bring suit, while nonetheless making it possible for such persons to bring suit. . . . [H]arm to the plaintiff is a necessary factor [of a Section 20A claim]. Such harm may be found where it appears that plaintiff might, in fact, have traded with defendant." *In re AST Research Sec. Litig.*, 887 F. Supp. at 233–34.  Hence, the same day rule.

GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER

1     There is no legal or factual basis supporting Plaintiff's Section 20A claim and it should

2   therefore be dismissed.

3   **III.     CONCLUSION**

4     For all the foregoing reasons and, as set forth in Symantec's Motion to Dismiss, the

5   Complaint should be dismissed.

6   Dated:  December 26, 2018                    MORGAN, LEWIS & BOCKIUS LLP

7

8                                               By _____ /s/ Susan D. Resley _____
                                                              Susan D. Resley
9
                                                *Attorney for Defendants Gregory S. Clark*
10                                              *and Nicholas R. Noviello*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                          Case No. 3:18-cv-02902-WHA
GREGORY S. CLARK'S AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS AND JOINDER