MILES EHRLICH (Cal. Bar No. 237954)
miles@ramsey-ehrlich.com
KATHARINE KATES (Cal. Bar No. 155534)
katharine@ramsey-ehrlich.com
CHHAYA MALIK BHALOTRA (Bar No. 228581)
chhaya@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

*Attorneys for Defendant Mark S. Garfield*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JAMES FELIX, individually and on behalf of all others similarly situated, | Case No. 3:18-cv-02902-WHA |
| Plaintiff, | **DEFENDANT MARK S. GARFIELD'S NOTICE OF JOINDER AND NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| SYMANTEC CORPORATION, GREGORY S. CLARK, NICHOLAS R. NOVIELLO, and MARK S. GARFIELD. | Judge: Hon. William H. Alsup |
| Defendants | Date: January 31, 2019 |
|  | Time: 8:00 a.m. |
|  | Courtroom: 12, 19th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 31, 2019, at 8:00 a.m. in the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 9, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable William H. Alsup, Defendant Mark S. Garfield will and hereby

does join in Symantec's Motion to Dismiss the Consolidated Class Action Complaint for (the "Symantec Motion") and Gregory S. Clark and Nicholas R. Noviello's Motion to Dismiss the Consolidated Class Action Complaint (the "Clark and Noviello Motion") and additionally moves the Court to dismiss him from the First and Second Causes of Action in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") for failure to state a claim against him.

This joinder and motion are brought under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), on the grounds that the Complaint fails to state a claim and fails to comply with Rule 9(b) and the PSLRA against all named defendants, including Mr. Garfield.

## STATEMENT OF ISSUES TO BE DECIDED

1. Does the Complaint allege a cause of action under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 based on a materially false statement made by Mr. Garfield, with knowledge of its falsity?

2. Does the Complaint state a claim for control person liability against Mr. Garfield under Section 20(a) of the Exchange Act?

This joinder and motion incorporates the Symantec, Clark, and Noviello Motions by reference and is based on those pleadings, the papers on file in this action, argument of counsel at the hearing, and other such matters as may be judicially noticed or come before the Court at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs seek to impose 10(b) liability on Mr. Garfield, the former Chief Accounting Officer of Symantec, who resigned on August 7, 2017, barely three months into the Class Period of the Complaint.  The only statements attributable to Mr. Garfield are contained within the 2017 10-K, filed on May 19, 2017, eight days into the class period.  But these statements are not actionable because they are neither false nor misleading.  Rather, they accurately reflect Symantec's actual revenue recognition

policy, the10-K's compliance with GAAP principles, and the company's actual non-GAAP transition costs. Indeed, Symantec has not restated or corrected any of the GAAP and non-GAAP metrics in the 2017 10-K. Further, Plaintiffs fail to allege facts that support a reasonable (much less the required *strong*) inference that Mr. Garfield knew or could have known that the statements in question were false when made. For these reasons, the 10(b) claim must be dismissed as to Mr. Garfield. Finally, because Plaintiffs allege no facts indicating that Mr. Garfield, in his role as Chief Accounting Officer, had any authority to direct or control the statements made by Symantec or its most senior officers, Defendants Noviello and Clark, the Section 20(a) claim should also be dismissed.

[Counsel incorporates by reference Symantec's Statement of Facts in its Motion to Dismiss at pages 3-6; and will not repeat the factual summation here.]

## II.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. GARFIELD UNDER SECTION 10(b) AND RULE 10b-5

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead specific facts showing: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Webb v. SolarCity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018) (citation omitted). Here, Plaintiffs have failed to allege sufficient facts to establish the first and second elements as to Mr. Garfield.

### A.   The only statements Mr. Garfield is alleged to have "made" are in the 2017 10-K.

Section 10(b) and Rule 10b-5 impose liability on a defendant only for statements that he or she "made" – that is, communications over which he or she exercised "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders* 564 U.S. 135, 142 (2011). Typically, "a statement was made by—and only by—the party to whom it is attributed." *Id.* at 142-43. This rule applies both to directors and officers. *See, e.g.*, *Hefler v. Wells*

*Fargo & Co.*, 2018 U.S. Dist. LEXIS 31874 at *33 (N.D.C.A. February 27, 2018) ("Plaintiffs must plead specific facts to show the individual defendants' ultimate authority over each of the alleged misstatements."); *see also SEC v. Daifotis*, 2011 U.S. Dist. LEXIS 83872 at *5 (N.D. Cal. Aug. 1, 2011) (noting that under *Janus* it is insufficient to allege only that the primary violator had been "significantly involved" or assisted with preparing the statement at issue).

Here, other than his signature on the 2017 10-K that was filed on May 19, 2017 – eight days into the class period – the Complaint fails to allege that Mr. Garfield drafted, prepared, reviewed, disseminated, certified, or approved any of the other alleged misstatements in question. *See* Compl. ¶ 22 (referring only to Garfield's alleged misstatement as to "Symantec's financial performance and stated metrics in the Company's May 19, 2017 Form 10-K").

### B. Plaintiffs fail to allege that any statements attributed to Mr. Garfield were materially false or misleading

Although the Complaint runs 115 pages, the only statements attributable to Mr. Garfield are found in the 2017 Form 10-K – none of which are materially false.  They include:

(1)    A note stating that "[t]he accompanying consolidated financial statements of Symantec and our wholly-owned subsidiaries are prepared in conformity with generally accepted accounting principles in the United States ('U.S. GAAP')." Compl. ¶189.

(2)    A statement regarding the GAAP revenue metric, explaining that the company "recognize[s] revenue when persuasive evidence of an arrangement exists, delivery has occurred, the fee is fixed or determinable, and collectability is probable."  Compl. ¶189.

(3)    Note 4 to the Consolidated Financial Statements regarding the non-GAAP transition costs and how they were calculated: "Transition costs primarily consist of consulting charges associated with the implementation of new enterprise

resource planning systems and costs to automate business processes."  Compl.
¶192.

> (4)     The section titled "Controls and Procedures" in which the signatories affirmed that "the Company's internal control over financial reporting was effective."  Compl. ¶ 199.

*First*, the allegations relating to the GAAP compliance of the 2017 10-K lack the specificity and particularity necessary to show that these statements were, in fact, materially false or misleading.  *See* Symantec Motion at pp. 8-9.  Indeed, Plaintiffs fail to identify a single cost item or entry in the 2017 10-K that was not GAAP-compliant.  *Id.* And Plaintiffs do not (and cannot) allege that revenue or any of the other GAAP metrics in the 10-K were restated by Symantec, which would have been required had there been a material misstatement.  Thus, on their face, the allegations regarding GAAP metrics and compliance do not adequately allege a materially false or misleading statement.

*Second*, Plaintiffs fail to allege specific facts establishing that the statement recounting Symantec's policy on revenue recognition was false.  Plaintiffs do not identify a single violation of the revenue recognition policy.  The only specific item related to revenue recognition alleged in the Complaint post-dates the 2017 10-K filing by a full year – and was deemed immaterial. *See* Compl.  ¶¶ 62, 176, referencing 9/24/18 press release (immaterial deferral of $12 million for one contract from 4Q18 to 1Q19).  But, of course, the accounting treatment given to a transaction from late 2018 has no bearing on whether the company accurately recounted its revenue recognition policy in the 10-K from the year before. In short, Plaintiffs rely on pure conjecture, and nothing more, to suggest that this earlier statement in the 2017 10-K was misleading or false at the time it was made.

*Third*, Plaintiffs fail to identify how the statement regarding non-GAAP transition costs in the 2017 10-K was materially false or misleading.  Symantec fully disclosed its methodology for calculating non-GAAP metrics and Plaintiffs have not otherwise established how the explanation for the calculation of transition costs is false.  *See*

Symantec Motion at pp. 3-5 and 9-11; *see also In re Netflix, Inc. Sec. Litig.,* 2005 U.S. Dist. LEXIS 30992, at \*26 (N.D. Cal. Nov. 18, 2005).  Nor do Plaintiffs plead facts that would show how any purported misstatement of transition costs in the 2017 10-K was material; again, there is no allegation that Symantec later corrected the transition costs metric due to a material inaccuracy discovered after the extensive Audit Committee investigation in 2018.  *See* Symantec Motion at pp. 5-6, 9-11.

*Fourth,* as to the statement regarding the effectiveness of internal controls, Plaintiffs again fail to allege any specific facts that establish the material falsity of these statements.  *See* Symantec Motion at pp. 12-13.  Though the Audit Committee investigation later recommended enhanced internal controls over certain transition and tracking expenses, Plaintiffs do not allege that the failure of any specific controls led to a material misstatement of any financial metric – much less that this inadequacy of controls would have been known to Mr. Garfield or anyone else at the time.  *Id.*

For all these reasons, Plaintiffs do not allege that Mr. Garfield made a materially false or misleading statement.

### C. Plaintiffs' allegations do not give rise to the strong inference that Mr. Garfield acted with scienter.

Plaintiffs' 10(b) claims against Mr. Garfield also fail for lack of scienter. To allege the requisite strong inference of scienter, a plaintiff must "plead in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct," *In re Silicon Graphics*, 183 F.3d 970, 974 (9th Cir. 1999), and they must do so as to each Defendant individually.  *Oregon Pub. Emples. Ret. Fund v. Apollo Group Inc.,* 774 F.3d 598, 607 (9th Cir. 2014).  The Reform Act and Rule 9(b) require "specifics or corroborating details of time, persons, places, and subjects." *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1091 (9th Cir. 2002).  And further, the Court must consider any reasonable competing inferences that could be drawn in favor of defendants to decide whether plaintiffs have pled a "strong inference" of scienter that is "cogent and at least as

compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

Here, Plaintiffs' allegations lack both the specificity and corroboration required to adequately plead scienter.  First, Mr. Garfield joins Symantec's Motion at §I B, in that the confidential witness statements lack fundamental indicia of reliability – offering only hearsay, rumor and speculation – and thus cannot support allegations of scienter.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995, 997, fn. 4 (9th Cir. 2009).  Second, even setting these concerns to one side, the assertions themselves lack the necessary particularity and offer nothing about Mr. Garfield's knowledge or intent.

For instance, Plaintiffs allege that sources assert that Mr. Garfield knew facts "that people did not want him to know." Compl. ¶ 80.  But Plaintiffs nowhere identify what Garfield allegedly knew that "people did not want him to know," when he came to know this unidentified information, what if anything caused him to be concerned about it, and whether those alleged concerns were adequately resolved before Garfield signed the 10-K on May 19, 2017.  *See* Compl. ¶ 77, 79, 80, 264.  Further, Plaintiffs vaguely allude to a conversation in which a confidential witness claimed to have received a call from Mr. Garfield and was told to release "those orders."  Compl. ¶ ¶ 74, 265.  But again, this allegation lacks any particularity about *what* was said, *when* it was said, and the accounting significance that may (or may not) have attached to the comment.  *Id*.  The allegations fail to indicate whether a release of "those orders" would be a violation of GAAP or the revenue recognition policy, much less that Garfield was himself aware of such a violation.  *Id.*

Rather than supporting a strong inference of scienter, a more plausible inference is that Mr. Garfield resolved any concerns that came to his attention and signed the 2017 10-K because he believed it was compliant.

Further, "[b]oilerplate language in a corporation's 10-K form . . . add nothing substantial to the scienter calculus." *Zucco,* 552 F.3d at 1003-04.  Thus, Plaintiffs' general references to the 2017 10-K, without more, do not create an inference of scienter.

### 1.   Mere knowledge of accounting does not establish scienter

Plaintiffs' conclusory allegation that scienter should be inferred from Garfield's knowledge about accounting is also insufficient.  Compl. ¶ 268.  Simply because Garfield had the skills or knowledge to identify an accounting violation does not mean that he had information about the violation alleged here.  *See Okla. Firefighters Pension & Ret. Sys. & Okla. Law Enforcement Ret. Sys. v. IXIA,* 2015 U.S. Dist. LEXIS 52776 at 109 (C.D.C.A. 2015) (accounting expertise not enough to establish scienter); *In re Autodesk, Inc. Securities Litigation*, 132 F.Supp.2d 833, 844 (N.D.C.A. 2000) (plaintiffs must do more than allege that key officers had requisite knowledge to establish scienter).

### 2.   Mr. Garfield's stock sales rebut any inference of scienter

As set forth in Symantec's Motion at § II A, pp. 25-25, nothing about Mr. Garfield's trading pattern supports the required strong inference of scienter.  First, the two class period trades were made pursuant to a non-discretionary 10b5-1 plan entered prior to the class period; thus, they cannot support an inference of scienter.  *See* Symantec's RJN, Ex. 23; *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 n. 11 (9th Cir. 2008) ("Sales according to predetermined plans may rebut an inference of scienter." (internal citation and punctuation omitted)).  These two trades were also entirely consistent with his pre-class period trading pattern – which Plaintiffs wholly ignore.  Both before and after the class period, he consistently sold all the shares that had vested. As such, the class period pattern is not "dramatically out of line with prior trading practices," *Zucco*, 552 F.3d at 1005, and thus cannot support an inference of scienter.  *Id. See also Police Ret. Sys. v. Intuitive Surgical, Inc.,* 759 F.3d 1051, 1064 (9th Cir. 2014) (rejecting allegation of scienter based on stock sales where plaintiff failed to plead prior trading history); *Metzler,* 540 F.3d at 1067 (officer's sale of 100% of stock when options vested was consistent with prior pattern and thus failed to raise a "strong inference" of scienter).

### III.   PLAINTIFFS FAIL TO ADEQUATELY PLEAD CONTROL PERSON LIABILITY AGAINST MR. GARFIELD UNDER SECTION 20(a)

Plaintiffs fail to sufficiently plead a claim for control person liability against Mr. Garfield for two independent reasons.  First, Plaintiffs do not plead a valid Section 10(b) claim against any Defendant, so there can be no secondary liability for Mr. Garfield under Section 20(a).  *See Zucco,* 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)").

Second, even if the Court were to find that an underlying violation is properly pled, Plaintiffs fail to allege concrete facts showing Mr. Garfield's control relationship with the level of particularity necessary to satisfy Rule 9(b) and the PSLRA. *See id.* Under this standard, Plaintiffs must provide specific factual support to indicate that a Section 20(a) defendant actually exercised control over a primary violator.   *See e.g., City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*, 2009 U.S. Dist. LEXIS 33339, at *31 (N.D.C.A. Apr. 6, 2009) (finding that allegations that defendant was a control person, held a particular position in the company, owned stock, and had the power and authority to cause the entity to act were insufficient).

Plaintiffs' blanket allegations of control person liability fall far short of Rule 9(b)'s pleading requirements and are particularly unconvincing as to Mr. Garfield. Plaintiffs' §20(a) claim is premised entirely on his position as the Chief Accounting Officer and the general responsibilities associated with that title.  Compl. ¶¶ 22, 312. Plaintiffs allege no additional facts establishing that Mr. Garfield, as the Chief Accounting Officer, was either in a position to, or in fact did, exercise authority and control over Symantec, or over Defendants Noviello and Clark, with respect to any alleged misleading statement. The absence of any specific facts beyond Mr. Garfield's title and general responsibilities are insufficient to support his control liability and is fatal to the 20(a) claim.  Compl. ¶¶ 22, n. 2. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* 2017 U.S. Dist. LEXIS 1109, at *857 (N.D. Cal. Jan. 4, 2017)  (dismissing a 20(a) claim based on the insufficient allegations that

defendants were "involved in the day-to-day operations of, and exercised power and control over VWGoA and VWoA, including by, among other things, directing their public statements and regulatory actions"); *Special Situations Fund III QP, L.P. v. Brar*, 2015 U.S. Dist. LEXIS 38825, at **31-33 (N.D. Cal. Mar. 26, 2015) (generalized allegations of control liability insufficient).

Further, to the extent the Court considers the confidential witness statements, they overwhelmingly suggest that Mr. Garfield was not a control person. *See e.g.* ¶ ¶ 74, 77, 78, 80, 217, 264, 265.

## IV.     CONCLUSION

For the foregoing reasons, and those set forth in the Symantec, Clark, and Noviello Motions, this Court should dismiss the Complaint against Mr. Garfield.


Dated:  December 26, 2018                     Respectfully Submitted,

                                              RAMSEY & EHRLICH LLP

                                                   //s//

                                              MILES EHRLICH
                                              KATHARINE KATES
                                              CHHAYA MALIK BHALOTRA
                                              *Attorneys for Mark S. Garfield*