**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
JONATHAN D.  USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3472

SALVATORE J. GRAZIANO (*pro hac vice*)
(salvatore@blbglaw.com)
JEROEN VAN KWAWEGEN (*pro hac vice*)
(jeroen@blbglaw.com)
JEREMY ROBINSON (*pro hac vice*)
(jeremy@blbglaw.com)
REBECCA E.  BOON (*pro hac vice*)
(rebecca.boon@blbglaw.com)
R. RYAN DYKHOUSE (*pro hac vice*)
Ryan.Dykhouse@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 554-1400

*Counsel for Lead Plaintiff*
*SEB Investment Management AB*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYMANTEC    CORPORATION    and GREGORY S. CLARK,<br><br>               Defendants. | Case No.  3:18-cv-02902-WHA<br><br>ECF CASE<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Dept.:    Courtroom 12, 19th Floor<br>Judge:   Honorable William Alsup<br>Date:    August 12, 2021<br>Time:    8:00 a.m. |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 2

I.      PRELIMINARY STATEMENT ............................................... 2

      A.     Factual Background ............................................. 4

      B.     Procedural History .............................................. 4

      C.     Settlement Negotiations ....................................... 7

II.     THE PROPOSED SETTLEMENT ..................................... 8

III.    ARGUMENT ...................................................... 10

      A.     The Court Should Grant Preliminary Approval .................. 10

            1.     The Proposed Settlement Is The Product Of Good Faith, Arm's-Length Negotiations Supervised By An Experienced Mediator ................................................. 10

            2.     The Proposed Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To Any Part Of The Class ......................................... 12

            3.     The Proposed Settlement Falls Within The Range Of Reasonableness And Warrants Notice And A Final Approval Hearing ................................................. 12

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................ 15

V.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND THE PROPOSED PLAN FOR PROVIDING NOTICE AND PROCESSING CLAIMS .......................................................... 18

      A.     Retention of A.B. Data.......................................... 18

      B.     Proposed Notice Procedures ..................................... 18

      C.     The Court Should Not Require a Third Opt-Out Period............... 20

      D.     Claims Processing .............................................. 22

      E.     Estimated Notice and Administrative Costs ....................... 23

VI.    ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S
EXPENSES ................................................................................................................ 24

VII.   PROPOSED SCHEDULE OF EVENTS ........................................................................ 25

VIII.  CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*Alexander v. FedEx Ground Package Sys., Inc.*,
   2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ................................................................ 21

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..................................................................... 10, 15

*Davis v. Abercrombie*,
   2017 WL 2234175 (D. Haw. May 22, 2017) ..................................................... 21

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................... 24

*Hefler v. Wells Fargo & Company*,
   Case No. 3:16-cv-05479-JST (N.D. Cal.) ........................................................ 17

*Hernandez v. Wells Fargo Bank, N.A.*,
   2020 WL 6020593 (N.D. Cal. Oct. 12, 2020) .................................................... 9

*In re HP Securities Litigation*,
   Case No. 3:12-CV-05980-CRB (N.D. Cal.) ..................................................... 17

*Huddlestun v. Harrison Glob., LLC*,
   2018 WL 3752368 (S.D. Cal. Aug. 7, 2018) .................................................... 10

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..................................................... 15

*In re Int'l Rectifier Corp. Sec. Litig.*,
   Case No. 2:07-cv-02544-JFW, slip op. (C.D. Cal. Feb. 8, 2010), ECF No. 316 ........................ 24

*In re LendingClub Sec. Litig.*,
   2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ................................................... 9

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................... 10

*Louie v. Kaiser Found. Health Plan, Inc.*,
   2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) .................................................... 12

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ........................................................... 21

*Low v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) .................................................................. 20, 21

*McPhail v. First Command Fin. Planning, Inc.*,
2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) ...........................................24

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)....................................................24

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
2019 WL 1752610 (9th Cir. Apr. 17, 2019) .....................................................24

*Negrete v. Allianz Life Ins. Co.*,
2015 WL 12592726 (C.D. Cal. Mar. 17, 2015).................................................21

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)...................................................10

*Officers for Justice v. Civ. Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...........................................................................21

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................11

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ...........................................................................23

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) ..................................................19

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) .............................................................................9

*Reynolds v. Direct Flow Med., Inc.*,
2019 WL 1084179 (N.D. Cal. Mar. 7, 2019)....................................................12

*In re RH, Inc. Securities Litigation*,
Case No. 4:17-00554-YGR (N.D. Cal.)............................................................17

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................................11

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .................................................11

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .........................................................................24

*In re Washington Mut., Inc.*,
2015 WL 12803633 (W.D. Wash. June 22, 2015).............................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................21

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ....................................................10

*Young v. Polo Retail, LLC*,
    2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ..................................................12

**STATUTES & RULES**

15 U.S.C. § 78u-4(a)(7) ..........................................................................................18

28 U.S.C. § 1715 ....................................................................................................19

Fed. R. Civ. P. 23(e)(1)................................................................................10, 12, 18

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................10

Fed. R. Civ. P. 23(e)(2) ..........................................................................................10

## NOTICE OF UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that Lead Plaintiff **SEB Investment Management AB ("SEB" or "Lead Plaintiff")** hereby moves for an order pursuant to Federal Rule 23(e)(1) that will: (1) preliminarily approve the proposed Settlement of this Action; (2) approve the form and manner of giving notice of the proposed Settlement to the Class; and (3) schedule a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses should be approved.[1]  Pursuant to Civil Local Rule 7-2, the motion is noticed for a hearing on August 12, 2021—but the motion is unopposed and the Parties agree that it may be decided on the papers at this time, should the Court so desire.  This motion is supported by the below memorandum of points and authorities, the attached Stipulation and its exhibits, the previous filings and orders in this case, and such other materials as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed $70 million cash Settlement is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval so that notice of the settlement and its terms can be disseminated to members of the certified Class.

2.      Whether the proposed form of settlement notice and proof of claim and release form and the manner for dissemination to the Class should be approved.

3.      Whether members of the Class who have already had two opportunities to request exclusion from this Action should be provided a third opportunity to opt-out.

4.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses.

---

[1]  Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated June 8, 2021 (the "Stipulation").  *See* Exhibit 1.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Lead Plaintiff is pleased to report that, after three years of hard-fought litigation including an early order dismissing all of the securities claims at issue, it has negotiated an agreement to settle this class action in full in exchange for a payment of $70 million in cash for the benefit of the Class, subject to the Court's approval.  Lead Plaintiff respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Federal Rule 23(e)(1), for preliminary approval of the proposed settlement (the "Settlement").  This motion is unopposed and all Parties agree that it may be decided on the papers at this time, subject to the Court's approval.

The Settlement, as set forth in the Stipulation (*see* Exhibit 1), provides for a payment of $70 million in cash into an escrow account for the benefit of the Class.  Lead Plaintiff submits that the Settlement represents an excellent result for the Class and ultimately should be approved by this Court, especially given the significant risks, costs, and delays of continued litigation, including the resolution of the pending motion for summary judgment, a trial, and the inevitable appeals.

The Settlement was reached after three years of vigorous litigation and after several months of arms'-length negotiations between the Parties.  The Parties' settlement negotiations were closely supervised by Magistrate Judge Donna M. Ryu and included two separate settlement conferences conducted several months apart involving detailed submissions on the evidence and the relative merits of the case.  Prior to reaching the Settlement, Lead Plaintiff and Lead Counsel had conducted an extensive investigation of the securities law claims at issue, including interviews of multiple former Symantec employees and the filing of two detailed amended complaints.  They litigated Defendants' motion to dismiss, which initially resulted dismissal of all of Lead Plaintiff's claims, and a vigorously contested motion for leave to amend, which ultimately resurrected the principal securities claims against Defendants Symantec and Gregory S. Clark (the former CEO), but dismissed two other defendants and a category of alleged misrepresentations.  Then, Lead Plaintiff and Lead Counsel fought a contested class certification motion, which successfully resulted in the Court certifying the proposed Class in full.  Lead Plaintiff and Lead Counsel also

completed fact and expert discovery, which included reviewing more than 2.1 million pages of documents from Defendants and multiple third parties, a contested discovery motion, the submission of nine expert reports from a total of six experts, and taking or defending a total of 29 fact and expert depositions.   Finally, the proposed Settlement was not reached until after the Parties had fully briefed Defendants' motion for summary judgment, which included the submission and/or review of 130 pages of briefing and several thousands of pages of exhibits. Given these extensive efforts, Lead Plaintiff and Lead Counsel had a very well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached.

Lead Plaintiff and Lead Counsel respectfully submit that the Settlement represents an excellent result for the Class based on the significant risks of the litigation, including the possibility of no recovery at all.   As noted, the Court initially dismissed all of the securities claims at issue on materiality and scienter grounds.    Then, in sustaining Lead Plaintiff's amended complaint, the Court noted that it would revisit some of these issues at summary judgment.   Lead Plaintiff faced serious risks at summary judgment and trial on each main element of its claims.   For example, Lead Plaintiff faced risk in establishing that Defendants made materially false and misleading statements, including on the key allegation that Defendants misclassified ordinary operating expenses as "transition and transformation" (T&T) expenses.   Indeed, at summary judgment, Defendants argued vehemently that Symantec did not misclassify any expenses and claimed that Symantec's accounting staff responsible for classifying the T&T expenses "testified uniformly and unambiguously that th[e] classifications were proper."   Defendants also vigorously disputed Lead Plaintiff's claim that $12 million in prematurely booked revenue was material to Symantec—an issue that originally caused this Court to dismiss the case.   On scienter, Defendants claimed that it could only be proved through Mr. Clark, which they argued was impossible because he relied on the Company's accountants and, when issues arose, he promptly tried to address them in good faith, including by hiring outside advisors.   Defendants also pointed to the conclusion of a full Audit Committee investigation led by outside advisors, which they argued found no material wrongdoing.   Defendants also maintained that Lead Plaintiff could not prove loss causation and

that damages were zero.  In light of the risks, costs and delays of further litigation, Lead Plaintiff and Lead Counsel believe the $70 million Settlement is an excellent resolution for the Class.

Lead Plaintiff respectfully requests that this Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation and as Exhibit 2 hereto. The Preliminary Approval Order, among other things: (i) schedules a final hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (the "Settlement Fairness Hearing"); (ii) preliminarily approves the Settlement as fair, reasonable, and adequate to the Class, pending the final hearing; (iii) approves the form and method of disseminating notice to the Class; and (iv) establishes procedures and deadlines for Class Members to submit Claim Forms for payments from the Net Settlement Fund and object to the Settlement, Plan of Allocation, and/or requested fees and expenses.

A.   **Brief Factual Background**

The allegations and claims in this Action are detailed in the First Amended Consolidated Class Action Complaint (ECF No. 183) (the "Complaint").  In sum, Lead Plaintiff alleges that, from May 11, 2017 through August 2, 2018 (the "Class Period"), Defendants Symantec and Clark misrepresented Symantec's financial results, including in particular by misclassifying T&T expenses and improperly recognizing revenue.  Lead Plaintiff alleges that the misrepresentations artificially inflated the price of Symantec common stock during the Class Period, which fell through partial corrective disclosures on May 10, 2018 and August 2, 2018.  Defendants denied any wrongdoing and denied that Class members suffered any damages.

B.   **Procedural History**

Beginning on May 17, 2018, several related securities class actions were filed in the Court. On August 23, 2018, the Court entered an Order appointing SEB as Lead Plaintiff, consolidating all related actions, and inviting applications for Lead Counsel.  Dkt. No. 25.  On October 4, 2018, the Court entered an Order approving Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel.  Dkt. No. 88.

On November 15, 2018, Lead Plaintiff filed a Consolidated Class Action Complaint against

Symantec, Clark, Nicholas R. Noviello, and Mark S. Garfield.   Dkt. No. 103.   Defendants filed motions to dismiss, which were fully briefed and argued by January 31, 2019.   Dkt. Nos. 112-115, 118, 123-125.   On June 14, 2019, the Court dismissed SEB's initial complaint and all claims, but granted leave to file a motion seeking leave to amend the complaint.   Dkt. No. 137.

On July 11, 2019, SEB filed a motion for leave to amend and, on July 23, 2019, after the Court unsealed documents in a derivative case involving Symantec, SEB filed an amended motion for leave to amend.   Dkt. Nos. 145, 150.   The motion for leave to amend was argued on September 26, 2019.   Dkt. No. 177.   On October 2, 2019, the Court granted SEB's motion for leave to amend, sustaining claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") against Symantec and Mr. Clark and Section 20(a) control person and Section 20A insider trading claims under the Exchange Act against Mr. Clark.   Dkt. No. 181.   However, the Court dismissed Symantec's former Chief Financial Officer and former Chief Accounting Officer as defendants.   *Id*. at 7-8, 10-11.   The Court also dismissed various other alleged misrepresentations. *Id*. at 11.   On October 11, 2019, Lead Plaintiff filed the operative Complaint.   Dkt. No. 183.   On November 7, 2019, Defendants filed their Answers.   Dkt. Nos. 185-86.

On January 17, 2020, Lead Plaintiff filed a motion for class certification.   Dkt. No. 197. Between then and March 5, 2020, the Parties produced documents, Defendants deposed a representative of SEB, each side deposed the other side's expert and the Parties filed their opposition and reply briefs.   The Parties also litigated whether a sur-reply could be filed.   On May 8, 2020, the Court issued an Order certifying the Class, appointing SEB as Lead Plaintiff for the certified Class, and appointing BLB&G as Class Counsel for the certified Class.   Dkt. No. 227.

On May 29, 2020, the Court approved the Parties' stipulation and proposed order regarding dissemination of notice to potential Class Members (the "Original Class Notice") to notify them of, among other things: (i) the Action pending against Defendants; (ii) the Court's certification of the Action to proceed as a class action on behalf of the Class; and (iii) their right to request to be excluded from the Class, the effect of remaining in the Class or requesting exclusion, and the requirements for requesting exclusion.   Dkt. No. 243.   The deadline for requesting exclusion from

the Class pursuant to the Class Notice was August 25, 2020.[2]

Discovery in the Action commenced in November 2019 and was voluminous and far-reaching.  For example, pursuant to detailed document requests, subpoenas, and extensive negotiations, Defendants and third parties produced more than 2.1 million pages of documents.  Lead Plaintiff produced over 4,180 pages of documents to Defendants.  Lead Plaintiff also deposed 20 fact witnesses, including Defendant Clark, two whistleblowers, former senior executives, and Symantec's outside advisors and auditors.  The Parties also served and responded to voluminous interrogatories and requests for admission, exchanged numerous letters, and worked to resolve multiple discovery disputes.  Lead Plaintiff also engaged in motion practice to resolve a discovery dispute concerning Symantec's production to the SEC.  Lead Plaintiff also subpoenaed and negotiated discovery with ten third parties, including Symantec's outside auditor, KPMG.  The Parties concluded fact discovery on January 29, 2021 (except for one fact deposition that was adjourned due to the pandemic, which was taken in March 2021).

Expert discovery commenced on January 29, 2021.  Over the course of expert discovery, Lead Plaintiff served opening and reply expert reports from three experts in the fields of accounting, executive compensation, and damages and Defendants served rebuttal expert reports from three experts in the same fields—for a total of nine expert reports served by all Parties.  The Parties then deposed all six experts and expert discovery closed on March 5, 2021.

On March 4, 2021, Defendants filed their motion for summary judgment.  Dkt. No. 291.  Lead Plaintiff filed its opposition to summary judgment on March 18, 2021 and Defendants filed their reply on March 25, 2021.  Dkt. Nos. 323, 360.  All told, the Parties' papers on summary judgment included 130 pages of briefing and several thousand pages of exhibits.  The Parties were preparing to argue the summary judgment hearing when the Settlement was reached.

In an Order dated April 20, 2021, the Court, among other things, ordered a second notice to

---

[2] A list of the persons and entities who requested exclusion pursuant to the Original Class Notice is available at www.SymantecSecuritiesLitigation.com.

1    be disseminated to the certified Class.  Dkt. No. 380.  By Order dated April 24, 2021, the Court

2    approved the dissemination of the second notice to potential Class Members (the "Supplemental

3    Class Notice") to notify them of, among other things, their right to request to be excluded from the

4    Class, the effect of remaining in the Class or requesting exclusion, and the requirements for

5    requesting exclusion.  Dkt. No. 386.  The deadline for requesting exclusion from the Class

6    pursuant to the Supplemental Class Notice was July 2, 2021.[3]

7    **C.     The Parties Extensive Settlement Negotiations Supervised By Judge Ryu**

8            Pursuant to the Court's Scheduling Order referring the case to Magistrate Judge Ryu for

9    settlement, on February 20, 2020, Judge Ryu convened a pre-settlement planning call to set up a

10   settlement conference.  Dkt. No. 214.  After several planning calls, including Zoom calls given the

11   intervening pandemic, a Zoom settlement conference was scheduled for September 14, 2020.  In

12   advance, the Parties exchanged detailed settlement conference briefs regarding the merits of the

13   case and separately made private submissions to Judge Ryu regarding their respective views on the

14   strengths and weaknesses of the case.  On September 14, 2020, the Parties and Symantec's

15   insurance carriers attended the settlement conference session, via Zoom, with Judge Ryu, but did

16   not reach an agreement to settle the Action.  The Parties continued their discussions for several

17   weeks after that initial session but were unable to reach an agreement to settle at that time.

18           After the end of fact and expert discovery and following full briefing on Defendants'

19   motion for summary judgment, the Parties scheduled a second settlement conference with Judge

20   Ryu on May 24, 2021, also via Zoom.  In advance, the Parties provided their summary judgment

21   briefing and again made private submissions to Judge Ryu regarding the strengths and weaknesses

22   of the case.  During the May 24, 2021 settlement conference supervised by Judge Ryu, which

23

24   [3] Because the July 2 exclusion deadline was a postmark deadline, additional timely requests for
     exclusions may still be received after the date of this filing.  The Notice Administrator, A.B. Data,
25   Ltd., will provide a complete list of the persons and entities who requested exclusion in connection
     with the Supplemental Class Notice by no later than July 19, 2021 as provided in the Court's April
26   24, 2012 Order (Dkt. No. 386), and will also make that list available at
27   www.SymantecSecuritiesLitigation.com.

28

Symantec's insurance carriers attended, the Parties reached an agreement in principle to settle the Action and negotiated a term sheet (the "Term Sheet") executed on May 26, 2021. The Term Sheet sets forth the Parties' agreement to settle and release all claims against Defendants in return for a cash payment of $70,000,000.

On June 8, 2021, the Parties entered into the Stipulation, which sets forth the terms of the Settlement. *See* Exhibit 1. Lead Plaintiff and Symantec also entered into a confidential Supplemental Agreement, which gives Symantec the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Class in an amount that exceeds an agreed-to amount. As is typical in such cases, the Supplemental Agreement is confidential, but will be made available to the Court under seal if the Court requests.

## II.   THE PROPOSED SETTLEMENT

The Settlement provides that Defendants will cause $70 million in cash to be paid into an interest-bearing escrow account for the benefit of the Class. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, and Taxes (the "Net Settlement Fund"), will be distributed among Class Members who submit valid Claim Forms, in accordance with the plan of allocation submitted herewith, subject to approval by the Court. Key features of the Settlement are summarized below.

The Settlement Class Is The Same As The Certified Class. The Settlement, if approved by the Court, will apply to the same Class that was certified by the Court in its May 8, 2020 Order (Dkt. No. 227), without any changes. The Class includes all persons or entities who purchased or otherwise acquired publicly-traded Symantec common stock during the period from May 11, 2017, to August 2, 2018, inclusive (the "Class Period"), and who were damaged thereby. *See* Stipulation ¶ 1(h).[4]

---

[4] The Class "includes all persons or entities who purchased Symantec common stock contemporaneously with sales of Symantec common stock made or caused by Defendant Clark during the Class Period," and "[e]xcluded from the Class by definition are Defendants; members of the Immediate Family of Defendant Clark; any person who was an officer or director of Symantec; any firm or entity in which any Defendant has or had a controlling interest; any person who

1         <u>The Release Is Limited To The Class's Asserted Claims and the Certified Class.</u>   In

2     exchange for the payment of the Settlement Amount, Class Members will release the "Released

3     Plaintiffs' Claims." Stipulation ¶ 1(mm).   The Settlement's release provision is narrowly tailored

4     to the Class's claims and the Class certified by the Court.   Indeed, the release is specifically limited

5     to (a) the actual claims asserted in the Action under Sections 10(b), 20(a), and 20A of the

6     Exchange Act and Rule 10b-5; or (b) unasserted claims that could have been brought based on

7     different legal theories <u>but</u> only if they specifically "arise out of or relate to the transactions or

8     occurrences asserted in the Complaint or Action *and* concern claims or causes of action of or by

9     Lead Plaintiff or any other Class Member who purchased or otherwise acquired Symantec

10    common stock during the Class Period and were allegedly damaged thereby." *Id*.   In other words,

11    the only unasserted claims that will be released are parallel claims (for example, state law fraud or

12    misrepresentation claims) that arise from the same facts asserted in the Action and are anchored to

13    the purchase or acquisition of Symantec common stock by Class Members during the Class Period,

14    and, thus, would have resulted in the same damages.   The proposed release is, therefore, closely

15    tailored to the conduct at issue in this Action and consistent with release provisions approved by

16    this Court and other courts in this District.[5]

17    ────────────────────────────────────

18    participated in the wrongdoing alleged; Defendants' liability insurance carriers; any affiliates,
      parents, or subsidiaries of Symantec; all Symantec plans that are covered by ERISA; and the legal

19    representatives, heirs, beneficiaries, successors-in interest, or assigns of any excluded person or

20    entity, in their respective capacity as such." Stipulation ¶ 1(h).   Also excluded from the Class are:
      the persons and entities who excluded themselves by submitting a request for exclusion from the

21    Class in connection with either the Original Class Notice or the Supplemental Class Notice; and, if
      and only if the Court requires an additional opportunity for Class Members to request exclusion

22    from the Class, any persons or entities who exclude themselves by submitting a request for

23    exclusion in connection with the Settlement Notice, and the legal representatives, heirs,
      beneficiaries, successors-in interest, or assigns of such excluded persons or entities, in their

24    respective capacity as such. *Id*.

      [5] *See Hernandez v. Wells Fargo Bank, N.A.*, 2020 WL 6020593, at *4 (N.D. Cal. Oct. 12, 2020)

25    ("The scope of the release, therefore, is tailored to the conduct at issue in this action . . . as well as
      the harm suffered by class members."); *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *4

26    (N.D. Cal. Mar. 16, 2018) (approving release in securities class action that was "anchored to 'the
      purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class

27    Members during the [class] period'"); *see generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

28    ────────────────────────────────────

Lead Plaintiff supports the proposed Settlement and believes that it represents an excellent recovery, and is fair, adequate, reasonable, and in the best interests of the Class.

## III.   ARGUMENT

### A.   The Court Should Grant Preliminary Approval

Strong judicial policy favors settlement of class actions.   *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).   Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice.

A district court's review of a proposed class action settlement is a two-step process.   <u>First</u>, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.   F.R.C.P. 23(e)(1).   <u>Second</u>, after notice and a hearing, the Court determines whether to grant final approval of the settlement. F.R.C.P. 23(e)(2); *see also Huddlestun v. Harrison Glob., LLC*, 2018 WL 3752368, at *2 (S.D. Cal. Aug. 7, 2018).   A court grants preliminary approval to authorize notice to the Class upon a finding that it "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing. Fed. R. Civ. P. 23(e)(1)(B).[6]   Here, the Settlement merits preliminary approval.

#### 1.   The Proposed Settlement Is The Product Of Good Faith, Arm's-Length Negotiations Supervised By Magistrate Judge Ryu

The fact that the Parties reached the Settlement after extensive arm's-length negotiations between experienced counsel and supervised by an experienced magistrate judge (Judge Ryu) appointed by this Court creates a presumption of its fairness. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness

---

442 F.3d 741, 748 (9th Cir. 2006) (a class release may release claims not asserted in the action as long as they arise from the same set of factual allegations).

[6] This standard for preliminary approval was established by amendments to Rule 23(e) effective on December 1, 2018.   Previously, courts had developed a standard for preliminary approval through case law that was substantively similar but phrased differently.   *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019).

and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").

During the two settlement conferences with Judge Ryu, the Parties fully explored the strengths and weaknesses of their respective claims and defenses. The negotiations focused on the complex and heavily disputed issues of whether Defendants made material misstatements and acted with the requisite scienter, as well as on loss causation issues.

The settlement process demonstrates that the Settlement was hard-fought and negotiated at arm's length. Settlement negotiations include two separate settlement conferences, in September 2020 and May 2021, and Judge Ryu, an experienced mediator, supervised and facilitated the negotiation process. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement. In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Here, Lead Counsel has a thorough understanding of the merits and risks of the Action and extensive experience in securities litigation. Lead Plaintiff's and Lead Counsel's belief in the fairness and reasonableness of this Settlement warrant a presumption of reasonableness.

In addition, the Parties reached the agreement to settle only after fully completing extensive fact and expert discovery, which included Lead Plaintiff obtaining and reviewing more than 2.1 million pages of documents from Defendants and third parties; deposing 20 fact witnesses, including Defendant Clark, two whistleblowers, and other former senior executives and former employees of Symantec; and taking or defending six expert depositions (in addition to the three fact and expert depositions taken or defended in connection with class certification). The extensive discovery conducted provided Lead Plaintiff and Lead Counsel with ample information

1    to ascertain the strengths and risks of the claims asserted in the Action and supports their

2    conclusion that the $70 million Settlement was fair and reasonable given the risks of the case.

3        In sum, the substantial recovery to the Class, the arm's-length nature of the negotiations,

4    and the participation of sophisticated counsel and an experienced mediator like Judge Ryu strongly

5    support a finding that the proposed Settlement is fair, reasonable, and adequate to justify notice to

6    the Class and a hearing on final approval.

7            **2.      The Proposed Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To Any Part Of The Class**

8        The Settlement "has no obvious deficiencies [and] does not improperly grant preferential

9    treatment to class representatives or segments of the class[.]"  *Young v. Polo Retail, LLC*, 2006 WL

10   3050861, at *5 (N.D. Cal. Oct. 25, 2006).  The $70 million recovery constitutes a significant and

11   certain benefit for Class Members.  Subject to Court approval, and pursuant to Lead Plaintiff's

12   prior approval, Lead Counsel will seek attorneys' fees of up to 19% of the Settlement Fund, and no

13   more than $2.5 million in Litigation Expenses.  Lead Plaintiff will receive distributions from the Net

14   Settlement Fund in accordance with the Plan of Allocation in the same manner as all other Class

15   Members, and will not apply for an award under the PSLRA for the time devoted by its employees

16   to the Action.  As discussed below, the proposed Plan of Allocation for allocating the Net

17   Settlement Fund among Class Members who submit valid Claim Forms is fair and reasonable.

18           **3.      The Proposed Settlement Falls Within The Range Of Reasonableness And Warrants Notice And A Final Approval Hearing**

19

20       At the preliminary approval stage, the Court need only determine whether it "will likely be

21   able" to approve the Settlement, *see* F.R.C.P. 23(e)(1), or, in other words, whether the Settlement

22   "falls within the range of possible approval."  *Reynolds v. Direct Flow Med., Inc.*, 2019 WL

23   1084179, at *4 (N.D. Cal. Mar. 7, 2019).  Because the $70 million Settlement represents a

24   favorable recovery for the Class in light of the risks of the litigation and the potential outcomes at

25   trial, Lead Plaintiff believes that the Settlement falls well within the range of possible approval.

26       Lead Plaintiff agreed to settle this Action on these terms based on its careful investigation

27   and evaluation of the facts and law relating to the allegations in the Complaint and consideration of

28

the substantial evidence developed in discovery, and the views expressed by Judge Ryu during the settlement negotiations.  *See Louie v. Kaiser Found. Health Plan, Inc.*, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

Lead Plaintiff and Lead Counsel believe the $70 million Settlement is an excellent result in light of the substantial risks that Lead Plaintiff and the Class would face in proving all of the elements of the asserted claims.  To be clear, Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit.  They duly recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through the Court's ruling on summary judgment, pre-trial motions, a trial, and appeals, as well as the very substantial risks they would face in establishing liability and damages.  Indeed, Defendants argued in their summary judgment papers that the original complaint was dismissed in its entirety by the Court and the amended complaint only "narrowly survived the pleading stage."

To start, Lead Plaintiff faced risk in proving that Defendants made materially false and misleading statements during the Class Period.  For example, a key aspect of the case concerned Lead Plaintiff's allegation that Defendants misclassified T&T expenses in order to meet executive compensation targets.  Lead Plaintiff cited, among other things, its accounting expert to argue that Symantec misleadingly represented that its T&T expenses facilitated comparison to prior periods or its peers, which Lead Plaintiff argued rendered all of those classifications misleading.  *See, e.g.,* Dkt. No. 341-3 at 10.  Lead Plaintiff otherwise claimed that specific T&T projects totaling $58.4 million were improperly classified.  *Id.* at 17.  But Defendants maintained that they did not misclassify any expenses at all and argued that, at their depositions, Symantec's accounting staff who were responsible for T&T classifications "testified uniformly and unambiguously that th[e] classifications were proper."  *See* Dkt. No. 290-3 at 2.  Lead Plaintiff also alleged that Symantec's premature recognition of $12 million in revenue in 4Q18 misled investors.  Defendants countered that no reasonable investor could find this alleged misstatement material to a multi-billion dollar per year in revenue company like Symantec, where the $12 million represented "less than 0.25%

of annual revenue and less than 1% of quarterly revenue."  As noted above, this issue initially resulted in the Court dismissing the case on materiality grounds.

Further, Lead Plaintiff faced risks in proving scienter—*i.e.*, that Defendants knowingly or recklessly deceived investors.  For example, Defendants argued that scienter could only be proved through Mr. Clark, former CEO, which was not possible because, according to Defendants, Mr. Clark was not aware of any misclassified expenses, had relied on the Company's accounting staff to handle such matters and, when issues arose, he promptly tried to address them in good faith, including by hiring outside consultants.  Defendants also argued that Symantec had robust processes and procedures to review T&T expenses, including Board-level review.  Defendants further pointed to the conclusion of a full Audit Committee investigation led by outside advisors that, according to Defendants, announced no restatement of historically filed financial statements and did not result in any employment actions against Symantec executives.

Lead Plaintiff also faced risks to proving loss causation and damages.  For example, Defendants contended that Lead Plaintiff could not establish a causal connection between the alleged misrepresentations and any loss allegedly suffered by investors.  Indeed, Defendants vehemently argued that that damages were zero because the alleged corrective disclosures on May 10 and August 2, 2018 merely discussed the existence of an investigation, without any admission of wrongdoing or correction of the past alleged misstatements.  Defendants also challenged the August 2018 disclosure specifically as revealing no "new" information about the alleged fraud. Finally, Defendants would also have raised a number of challenges to the calculation of damages, including that any gains that the Class Members received from their sale of pre-Class Period shares during the Class Period (while Symantec's stock price was alleged inflated) should offset (be "netted" against) the damages they suffered from the purchase of shares in the Class Period.  Thus, Lead Plaintiff faced significant risks at summary judgment and trial.

A comparison of the $70 million recovery to the potential damages that might be recovered for the Class at trial further supports the reasonableness of the Settlement.  After completing a detailed damages study (*see* Dkt. No. 345 at 266-375), Lead Plaintiff's damages expert has

1    calculated that the maximum possible aggregate damages, assuming complete success in proving

2    liability and 100% valid claims from the Class post-trial, would be approximately $1,009.6 million

3    in total Class-wide damages for Lead Plaintiff's securities fraud claims under Sections 10(b)

4    and/or 20(a) of the Exchange Act.  *See* Dkt. No. 345.[7]  If class members' gains on shares owned

5    prior to the Class Period but sold for a profit during the Class Period were deducted, then the

6    maximum possible Section 10(b)/20(a) damages would be reduced to $679.6 million—still

7    assuming complete success in proving liability at trial.  Accordingly, the $70 million Settlement

8    represents a recovery of approximately 6.9% of the absolute *maximum* possible damages for all

9    claims or over 10.2% of the absolute *maximum* possible damages for all claims after accounting

10   for the netting of pre-Class Period gains.  This is <u>before</u> accounting for any of Defendants' serious

11   defenses to loss causation and damages.  If any or all of those defenses were accepted, the

12   maximum damages would be substantially lower or even zero.  Lead Plaintiff and Lead Counsel

13   respectfully submit that the Settlement is a very favorable outcome for the Class given the

14   substantial risks of continuing this litigation, and the uncertainty inherent in establishing liability, as

15   well as the advantages of obtaining an immediate cash benefit for Class Members and avoiding the

16   substantial expenses and delays of further litigation.[8]

17   **IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

18        Lead Plaintiff also seeks preliminary approval of the proposed Plan of Allocation of the

---

[7] The insider trading claims under Section 20A of the Exchange Act had damages that ranged, depending on the methodology used, from $772,000 (based on inflation, which would overlap with the Section 10(b) damages) to $6 million (based on sale prices assuming a cost basis of zero).  *See id.* at 374.  To err on the side of caution, the percentage of recovery figures set forth below use the maximum $6 million in Section 20A damages for purposes of calculating the totals.

[8] *See, e.g.*, *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered at trial" and finding it "within the median recovery in securities class actions settled in the last few years"); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding that securities-class-action settlement recovery of 7% of estimated damages "weigh[s] in favor of final approval").  Also, as set forth in the proposed Settlement Notice, the estimated average recovery (before the deduction of Court-approved fees, expenses and costs) per eligible share is $0.20.

settlement proceeds, which is set forth in the Settlement Notice to be mailed to Class Members. The Court's review of the proposed Plan of Allocation under Rule 23 is governed by the same standards of review applicable to the settlement—*i.e.,* the plan must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284. The Plan of Allocation, which Lead Counsel developed with the assistance of Lead Plaintiff's damages expert, provides a fair, reasonable and equitable basis to allocate the Net Settlement Fund among Class Members who submit acceptable Claim Forms.

In developing the Plan of Allocation, Lead Plaintiff's expert calculated the estimated amount of artificial inflation in the per-share price of Symantec common stock that was allegedly caused by Defendants' alleged misstatements. *See* Plan ¶ 2. In so doing, the expert considered the price changes in Symantec common stock in reaction to the disclosures that allegedly corrected the alleged misrepresentations and adjusted for market and industry factors. *Id*.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Symantec common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Plan ¶¶ 6-7. In general, Recognized Loss Amounts will be the lower of: (i) the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, and (ii) the difference between the actual purchase price and sales price. Plan ¶¶ 4, 6. For shares sold during or after the 90-day period following the end of the Class Period, the Plan also limits Recognized Loss Amounts based on the average price of the stock during that 90-day period, consistent with the PSLRA. Plan ¶¶ 6(c), 6(d). Under the Plan, claimants who purchased shares during the Class Period but did not hold those shares through at least one of the alleged corrective disclosures will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. Plan ¶¶ 4, 6(a). Claimants who purchased their shares "contemporaneously" with sales of Symantec common stock by Defendant Clark during the Class Period (defined as within nine trading days after the sales) will be entitled to a small increase in their Recognized Loss Amount for those purchases to reflect that they had claims

against Defendant Clark under Section 20A of the Exchange Act that were not possessed by other members of the Class and which could conceivably give rise to some separate damages.  Plan ¶ 7.

The sum of a claimant's Recognized Loss Amounts for all of his, her, or its Class Period purchases is the Claimant's "Recognized Claim," Plan ¶ 9, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Plan ¶ 16.

One hundred percent of the Net Settlement Fund will be distributed to Eligible Claimants. Moreover, if any funds remain after an initial distribution to Eligible Claimants as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective.  Plan ¶ 18.  The Plan of Allocation also identifies the Investor Protection Trust as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to Eligible Claimants have been completed. *Id.*   The Investor Protection Trust, a 501(c)(3) nonprofit organization devoted to investor education, is an appropriate *cy pres* recipient because of the nature of the securities claims at issue, and courts in this District have approved it as a *cy pres* recipient in other similar actions.[9]  *See In re RH, Inc. Securities Litigation*, Case No. 4:17-00554-YGR (N.D. Cal.); *Hefler v. Wells Fargo & Company*, Case No. 3:16-cv-05479-JST (N.D. Cal.); and *In re HP Securities Litigation*, Case No. 3:12-CV-05980-CRB (N.D. Cal.).  Payment will only be made to this charity when the residual amount left for re-distribution to Class Members is so small that a further re-distribution would not be cost effective (for example, where the costs would subsume the funds available).

Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims.

---

[9] BLB&G has no relationship with the Investor Protection Trust other having selected it as a *cy pres* recipient in other securities class actions in the past.

## V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND THE PROPOSED PLAN FOR PROVIDING NOTICE AND PROCESSING CLAIMS

### A.   Retention of A.B. Data

Lead Plaintiff proposes that the notice and claims process be administered by A.B. Data, Ltd. ("A.B. Data"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions.  *See* Declaration of Eric J. Miller ("Miller Decl."), attached as Exhibit 3, at ¶¶ 1-2.  A.B. Data's firm resume is Exhibit A to the Miller Decl.

A.B. Data has already been serving as Notice Administrator responsible for disseminating the Original Class Notice and Supplemental Class Notice in this Action, and was approved by the Court for this role.  Dkt. No. 243, ¶ 4; Dkt. No. 386, ¶ 1.  Prior to the dissemination of the Original Class Notice, Lead Counsel selected A.B. Data after a competitive bidding process in which four firms submitted proposals.  *See* Declaration of Jeremy P. Robinson ("Robinson Decl."), attached hereto as Exhibit 4, at ¶¶ 2-3.  All of the proposals received involved comparable methods of providing notice and claims processing, including use of first-class mail and identifying potential Class Members through brokers and nominee owners, and A.B. Data provided the lowest cost bid of the four.  *Id.* ¶ 3.  Lead Counsel has engaged A.B. Data to serve as notice or settlement administrator in eight (8) cases other than this one in the past two years—as compared to a total of 24 such new engagements during this period, or roughly one third of its cases.  *Id.* ¶ 4.  Lead Counsel has found A.B. Data to be a reliable administrator for these types of cases.  *Id.* ¶ 5.

### B.   Proposed Notice Procedures

Lead Plaintiff respectfully submits that the Court should approve the form and content of the proposed Settlement Notice and Summary Settlement Notice.  *See* Stipulation, Exs. A-1 and A-3. The Settlement Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have.  Consistent with Rule 23(e), the Settlement Notice apprises Class Members of the terms of the Settlement and the options available to them. The Settlement Notice also satisfies the requirements imposed by the PSLRA, *see* 15 U.S.C. § 78u-4(a)(7), in that it, among other things, states the amount of the Settlement on an absolute and per-

share basis; states the maximum amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.  *Id*.

The Settlement Notice also meets the requirements of the Northern District of California Procedural Guidance for Class Action Settlements as it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "instructions on how to access the case docket."  *See* N.D. Cal. Proc. Guidelines ¶ 3.  The Settlement Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, and objections to any aspect of the Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses.

The proposed method for disseminating notice, which is set forth in the Preliminary Approval Order submitted herewith, also readily meets the standards under the Federal Rules and due process.  Federal Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement.  F.R.C.P. 23(e)(1).

If the Court preliminarily approves the Settlement, A.B. Data will mail the Settlement Notice and Claim Form (the "Settlement Notice Packet") to all identified potential Class Members. A.B. Data will also cause the Summary Settlement Notice, which provides an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published once each in *The Wall Street Journal* and *The Financial Times* and transmitted over the *PR Newswire*, a national wire service, and will publish the Settlement Notice and Claim Form and other materials on www.SymantecSecuritiesLitigation.com.[10]

The proposed plan for providing notice is the same method used in numerous other securities class actions, including this one.  Courts routinely find that comparable notice programs,

---

[10] The Parties agreed that, within ten calendar days following the filing of the Stipulation with the Court, Symantec, on behalf of all Defendants, shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), *et seq.* ("CAFA").  *See* Stipulation ¶ 20.

1   combining individual notice by first-class mail to all class members who can reasonably identified,

2   supplemented with publication notice, meet all the requirements of Rule 23 and due process.  *E.g.*,

3   *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding

4   that "notice by mail and publication is the 'best notice practicable under the circumstances'").

5               **C.      The Court Should Not Require a Third Opt-Out Period**

6          On May 8, 2020, the Court certified the Class (Dkt. No. 227) and, thereafter, approved the

7   proposed form and manner for providing notice of the pendency of the Action as a class action to

8   potential Class Members (Dkt. No. 243).  Beginning in June 2020, the Original Class Notice was

9   disseminated to potential Class Members to inform them of the pendency of the Action as well as

10  their right to request exclusion from the Class and the procedures for doing so.  *See* Dkt. No. 256,

11  at ¶¶ 1-8 and Ex. A.  The Original Class Notice advised recipients that it was within the Court's

12  discretion to allow a second opportunity to request exclusion from the Class if there was a

13  settlement, and that there was no guarantee that there would be such a second opportunity.  *See*

14  Dkt No. 256, Ex. A at 3 ("It is within the Court's discretion whether to allow a second opportunity

15  to request exclusion from the Class if the Action is resolved by a settlement.  In other words, this

16  may be your only chance to opt out of the lawsuit.").  As reported by A.B. Data, over 126,000

17  copies of the Original Class Notice were mailed to potential Class Members and 49 requests for

18  exclusion were received in connection with that notice.  Dkt. No. 256, ¶¶ 8, 12.

19         On April 20, 2021, the Court ordered a second notice to be disseminated to the certified

20  Class to inform Class Members of the circumstances described in that order, including that Lead

21  Counsel hired Hans Ek, the former Deputy CEO of SEB, and to provide Class Members with a

22  second opportunity to request exclusion from the Class.  Dkt. No. 380.  The Court approved the

23  second form of notice on April 24, 2021.  Dkt No. 386.  A.B. Data began mailing the Supplemental

24  Class Notice to potential Class Members on May 7, 2021, and, as of July 2, 2021, had mailed a

25  total of 162,865 copies of that notice.  *See* Miller Decl. ¶ 8.  To request exclusion from the Class in

26  response to the Supplemental Class Notice, Class Members must submit a request postmarked by

27

28

July 2, 2021.  *See id.*, Ex. B at 3.  To date, A.B. Data has received 44 additional requests for exclusion from the Class in response to the Supplemental Class Notice.  *See id.* ¶ 11.[11]

Both Class Notices made clear that any Class Members who did not request exclusion would "be bound by any judgment or settlement, whether favorable or unfavorable, in this Action."  Dkt No. 256, Ex. A at 2; Miller Decl., Ex. B at 2.

Given the extensive notice program undertaken in connection with class certification and the ample opportunity provided to Class Members to request exclusion from the Class—first, at the time of the Original Class Notice and, second, at the time of the Supplemental Class Notice—the Parties respectfully propose that a third opportunity to opt out of the Class need not be provided at the settlement approval stage, subject to the Court's approval.

The decision whether to grant an additional opt-out period at the time of settlement pursuant to Rule 23(e)(4) is left to the Court's sound discretion.  *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out.") (quoting *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982)); *Davis v. Abercrombie*, 2017 WL 2234175, at *9 (D. Haw. May 22, 2017) ("the decision to require a post-settlement opt-out process is within the court's sound discretion"); *Negrete v. Allianz Life Ins. Co.*, 2015 WL 12592726, at *9 (C.D. Cal. Mar. 17, 2015) ("It is not necessary to provide a second opt-out right to class members.").

Courts have frequently found it unnecessary to provide an additional opt-out period where, as here, the class was given an ample opportunity to opt out following class certification, and will receive notification of the settlement and the opportunity to object at a formal fairness hearing. *See e.g.*, *Davis*, 2017 WL 2234175, at *9; *Alexander v. FedEx Ground Package Sys., Inc.*, 2016 WL 1427358, at *6 (N.D. Cal. Apr. 12, 2016); *Negrete*, 2015 WL 12592726, at *9; *In re*

---

[11] As the Court ordered, Lead Counsel will bear the costs for dissemination of the Supplemental Class Notice and will not seek reimbursement for those costs.  *See* Stipulation ¶ 1(dd).

1    *Washington Mut., Inc*., 2015 WL 12803633, at *1 (W.D. Wash. June 22, 2015).  Moreover, Lead

2    Counsel searched and could not find any examples of a Court providing a third opt-out period in

3    connection with a settlement after already providing two opportunities to request exclusion.

4            There is no reason to require a third opt-out opportunity here.  *First*, through two rounds of

5    notice and opt-out periods, the Class was fully informed of the nature of this litigation and the right

6    to opt-out.  *Second*, the widespread notice program in connection with class certification and in the

7    second notice program were effective, as evidenced by, among other things, the number of

8    exclusions received, which totaled 93.  *Finally*, the only new developments that have occurred

9    since Class Members made their decision of whether to opt out—namely, continued litigation that

10   culminated in a substantial recovery—provide a clear benefit to the Class and negate any potential

11   prejudice from not allowing a third opt-out.  Accordingly, the Court should not require a third opt-

12   out period.  *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1310 (S.D. Cal. 2017) (rejecting

13   all of objector's arguments as to why a second opt-out period at settlement should be granted),

14   *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *Davis*, 2017 WL 2234175, at *9 (declining to order second

15   opt-out at settlement); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 342 (S.D.N.Y. 2005)

16   (holding there was "no reason . . . to permit a second opportunity to opt out" because class

17   members received full opportunity to opt out following class certification and to object to

18   settlement at fairness hearing).

19           While the Parties request that the Court not permit a third opt-out period, the effectiveness

20   of the Settlement is not contingent on that approach.  On the contrary, if the Court decides to allow

21   a third opt-out period, the Settlement will proceed.  The Parties would need only to submit revised

22   versions of the Preliminary Approval Order, Settlement Notice, and Summary Settlement Notice as

23   the drafts submitted to the Court herewith do not contemplate a third opt-out period.

24           **D.     Claims Processing**

25           The net proceeds of the Settlement will be distributed to Class Members who submit

26   eligible Claim Forms with required documentation to A.B. Data.  A.B. Data will review and

27   process the claims under the supervision of Lead Counsel, will provide claimants with an

28

opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.[12]

A.B. Data estimates that a total of 163,000 Settlement Notice Packets will be mailed (based the number of potential Class Members previously identified in connection with mailing the two Class Notices) and that approximately 32,600 claims will be received, which is based an estimated 20% response rate, which A.B. Data finds reasonable and typical.  *See* Miller Decl. ¶ 15-16. Summary information for three recent cases in which BLB&G acted as lead counsel and A.B. Data was retained as the settlement administrator is attached to the Miller Decl. as Exhibit C.

## E.     Estimated Notice and Administrative Costs

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the notices, publishing the Summary Settlement Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  Because the costs are dependent on how many Settlement Notice Packets are ultimately mailed and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided.  Based on the estimates of Settlement Notice Packets to be mailed and claims received discussed above, A.B. Data estimates that the total Notice and Administration Costs for the Action will be approximately $415,000.  *See* Miller Decl. ¶ 17.  This amount includes the costs for printing and mailing the Original Class Notice, and related costs such as maintaining the website and P.O. Box and fielding Class Member calls, and estimated costs for mailing the Settlement Notice Packet and processing claims received.  It does ***not*** include any costs related to the Supplemental Class Notice, which will be borne by Lead Counsel.  *See* Stipulation ¶ 1(dd). The Notice and Administration Costs are necessary to effectuate the Settlement and are reasonable

---

[12] The Settlement is not a claims-made settlement.  If the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted.  *See* Stipulation ¶ 13.

in relation to the value of the Settlement, as the estimated total administrative costs represent less than 0.6% of the Settlement Amount.  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.  *See* Stipulation ¶¶ 9, 14.

## VI.    ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES

As explained in the Settlement Notice (Stipulation, Ex. A-1, at ¶¶ 5, 54), Lead Counsel intends to seek an award of attorneys' fees of up to 19% of the Settlement Fund (*i.e.*, 19% of the Settlement Amount, or $13,300,000, plus interest earned at the same rate as the Settlement Fund), and payment of Litigation Expenses not to exceed $2.5 million.  Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the final Settlement Hearing.  However, for purposes of the Court's preliminary review in connection with this motion, Lead Counsel notes that the maximum fee that Lead Counsel will request, *i.e.*, 19%, is the result of an *ex ante* negotiation with a sophisticated Lead Plaintiff, is below the 25% benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), and is on the lower end of the range of percentage fees awarded in comparable class securities class actions with significant contingency fee risks, *see, e.g.*, *In re Int'l Rectifier Corp. Sec. Litig.*, Case No. 2:07-cv-02544-JFW, slip op. at 1 (C.D. Cal. Feb. 8, 2010), ECF No. 316 (awarding 25% of $90 million settlement).

Moreover, based on its initial review of its contemporaneous time records, Lead Counsel has devoted a total of over 46,000 hours to the Action with an estimated total lodestar value of over $21.8 million.  If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with its fee application at the final approval stage, after further detailed review and adjustment of the contemporaneous daily time entries to account for billing judgment and other factors, including, for example, the full removal of time spent working on the issue raised by Robbins Geller.  Lead Counsel anticipates that a fee of $13.3 million will represent a substantial discount on counsel's lodestar.  For example, based on an estimated lodestar of $21.8 million, a $13.3 million fee would represent a lodestar multiplier of **0.6**, which constitutes a **negative**

multiplier (or a lodestar multiplier of substantially less than one).  Such a multiplier is well below the range of multipliers commonly awarded in class actions and other similar cases.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (awarding fee representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 2019 WL 1752610 (9th Cir. Apr. 17, 2019); *see generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0).

Lead Counsel also intends to seek payment for Litigation Expenses in an amount not to exceed $2.5 million, which includes costs for experts, document management, mediation fees and travel, among other costs.

## VII.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.  The Parties respectfully propose the schedule set out in Appendix 1, as agreed by the Parties and set forth in the proposed Preliminary Approval Order. Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, the Parties request the Court consider this motion for preliminary approval on the papers at this time.  If the Court enters the Preliminary Approval Order on or before July 16, 2021, the Settlement Hearing could be scheduled for the week of October 25, 2021 or as soon thereafter as the Court can schedule.

## VIII.   CONCLUSION

For the above reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

1   Dated:  July 6, 2021

2   Respectfully Submitted,

3   BERNSTEIN LITOWITZ BERGER
        & GROSSMANN LLP

4   */s Jeremy P. Robinson*

5   JONATHAN D. USLANER
    jonathanu@blbglaw.com

6   12481 High Bluff Drive, Suite 300
    San Diego, CA 92130

7   Tel:    (858) 793-0070
    Fax:    (858) 793-0323

8   --and—

9   SALVATORE J. GRAZIANO (*pro hac vice*)
    (salvatore@blbglaw.com)

10  JEROEN VAN KWAWEGEN (*pro hac vice*)
    jeroen@blbglaw.com

11  JEREMY P. ROBINSON (*pro hac vice*)
    jeremy@blbglaw.com

12  REBECCA E.  BOON (*pro hac vice*)
    rebecca.boon@blbglaw.com

13  R. RYAN DYKHOUSE (*pro hac vice*)
    Ryan.Dykhouse@blbglaw.com

14  1251 Avenue of the Americas
    New York, NY 10020

15  Tel: (212) 554-1400

16  *Counsel for Lead Plaintiff SEB Investment*
    *Management AB and Lead Counsel for the Class*

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Appendix 1**

**Proposed Schedule of Events**

| Event | Time for Compliance | Proposed Calendar Dates* |
|---|---|---|
| Deadline to commence mailing the Notice and Proof of Claim to potential Class Members ("Notice Date") | 15 business days after entry of Preliminary Approval Order  (Preliminary Approval Order ¶ 4(a).) | August 6, 2021 |
| Deadline for publishing Summary Notice | 10 business days after Notice Date  (*Id.* ¶ 4(b).) | August 20, 2021 |
| Deadline for filing final approval papers | 35 calendar days prior to Settlement Fairness Hearing (*Id.* ¶ 21.) | September 20, 2021 |
| Postmark deadline for objections to the Settlement | 21 calendar days before the Settlement Fairness Hearing (*Id.* ¶¶ 11-12.) | October 4, 2021 |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Fairness Hearing (*Id.* ¶ 21.) | October 18, 2021 |
| Settlement Hearing | 100 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter  (*Id.* ¶ 2.) | October 25, 2021 |
| Postmark deadline for submitting claim forms | 120 calendar days after the Notice Date  (*Id.* ¶ 7.) | December 4, 2021 |

*The "Proposed Calendar Dates" are based the assumption that the Court enters the Preliminary Approval Order on or before July 16, 2021 and sets the Settlement Fairness Hearing for October 25, 2021.